HELEN JANE YOUNG, Appellee, v. FLORENCE YOUNG-WISHARD, Appellant.

No. 44707.

NOVEMBER 14, 1939.

Jones & White, for appellee.

Buell McCash, for appellant.

MITCHELL, J.—The appellee is the granddaughter and the

sole and only heir of one Frank C. Young, who died intestate on December 18, 1932, at the age of 70 years. The appellant, a lady of 65 years, was the wife of Frank C. Young at the time of his death.

Frank C. Young had formerly been sheriff of Davis county, Iowa; he was, up until shortly before his death, vice president, director and stockholder of the Davis County Savings Bank, the largest financial institution in the county. He had represented Davis county in the state legislature and for 20 years had been secretary of the county fair association. He first married Pearl Davies, who died in April 1920. They had one child, Harry D. Young. The son married Helen Wray, the daughter of O. D. Wray, a competitor in the banking business, and not a friendly one either. The Harry D. Youngs had one daughter, Helen Jane Young, the appellee in this case, her father died in 1917.

On September 27, 1921, Frank C. Young married Florence Knight-Firestone. She had been married twice before. Her first husband was A. L. Knight, and they had two sons, Glen and Frank. Mr. Knight died in 1898. In 1900 Mrs. Knight married C. D. Firestone, described as a nephew of Harvey Firestone of rubber fame. He died in 1914. On September 27, 1921, Mrs. Firestone married Frank C. Young, and they lived together as man and wife until his death. There were no children by this marriage. Four years after the death of Frank Young, the appellant married Henry A. Wishard.

The parents of Frank C. Young gave him a farm consisting of 140 acres and later he purchased an additional 107 acres, making a total acreage of 247 acres, which is the real estate out of which this controversy arose.

On November 11, 1932, Frank C. Young interviewed (according to the appellant's brief), but perhaps the word consulted would be better, one W. C. Deupree, an abstracter, we quote from her brief:

"Both these gentlemen were laymen, one a banker, the other an abstracter, and doubtless felt as do secretly most bankers and abstracters, that they knew more about property law than attorneys, so they set about to do some legal business 'guided by the light of nature' which on the occasion, unfortunately, but dimly shown."

Nothing was accomplished on the first day, except the interview or consultation, whichever word one may use to describe it.

On the following day, November 12, Frank C. Young and the appellant (his wife), went to the office of W. C. Deupree, who had prepared an agreement as requested by Mr. Young on the day before. It was read over and Mr. Young suggested that it contained the town property which he had already conveyed to his wife. Mr. Deupree redrafted the instrument and it was signed by Mr. Frank C. Young and his wife, the appellant in this case, in the presence of two witnesses. It was introduced in evidence and is known as Exhibit P-4, which is as follows:

"Exhibit 'P-4'"

(identical with)

"Exhibit 'P-4a'"

"This Writing Witnesseth That Frank C. Young desires that all property owned by him at his death shall go to his wife Florence F. Young during the time of her natural life in lieu of her statutory rights and at her death to his granddaughter Helen Jane Young, if living, or to her bodily heirs if any, but in the event of the death of said Helen Jane Young prior to the death of his wife without Helen Jane Young leaving any bodily heirs then, and in that event his wife Florence F. Young to be the absolute owner of all of said property.

"In accordance with my wishes and desire I have this day executed a deed conveying my farm located in Section 6, Township 68, Range 13 to my wife Florence F. Young with the express understanding and agreement that she will carry out my wishes and desires by execution of a will or a proper deed of conveyance.

"In acceptation of and in accordance with the wishes and desires of my husband Franck C. Young I have this day executed a deed of conveyance of the farm above described to said Helen Jane Young and placed the same in escrow to be delivered to her upon my decease but in the event the said Helen Jane Young dies first without leaving any bodily heirs then this deed to be void and may be taken up by me.

"Signed this 12th day of November, 1932.

"In the presence of

(Signed) W. C. Deupree.

"I reserve life estate in and to all of said premises including full possession and all rents and profits thereto during my natural life time.

"(In the handwriting of W. C. Deupree the following is found)

"The above signed by Florence F. Young and Frank C. Young. Same witnessed by myself and H. L. Sprowles.

"11/23/32. Mr. Young this day phoned me that he would call for the paper after dinner today. Mrs. Young knocked at back door of office, said he was getting gasoline at Junkins station and that she come for the paper they were going to Centerville."

On the same day and at the same time, Frank C. Young executed and delivered to the appellant a warranty deed conveying his Davis county farm to the appellant, reserving a life interest therein unto himself which deed was thereafter duly filed for record by Mrs. Young.

It is the claim of the appellant that on November 23, 1932, at the request of her husband, she went to the office of W. C. Deupree and received from him the original of Exhibit P-4. That she and Mr. Young drove to the nearby city of Centerville, and consulted with the law firm of Valentine and Valentine. The consultation being with Mr. H. E. Valentine, although Lieutenant Governor John Valentine, the other member of the firm, was present some of the time. That Mr. H. E. Valentine informed Mr. Young that Exhibit P-4 did not carry out the manner in which he desired to leave the farm in controversy, and that Mr. H. E. Valentine at that time tore up the original of Exhibit P-4 and threw it in the wastebasket.

Mr. Valentine then prepared a quitclaim deed whereby Frank C. Young conveyed the farm in controversy to the appellant. This was an absolute conveyance, and did not reserve a life estate as had the deed of November 12. The second deed was duly executed and delivered to Mrs. Young, and by her recorded in Davis county. It is under the deed dated November 23, 1932, that the appellant makes her claim to the real estate.

Some years after the death of Frank C. Young, this action was commenced in equity by his granddaughter, Helen Jane Young (now Evans) against Florence Young-Wishard to establish and confirm an express trust in and to the real estate in controversy. There were several counts in the petition, but all were decided adversely to the appellee, with the exception of Count 1. She has not appealed, and so the questions involved in the other counts are not now before this court. The appellant filed answer and also a cross-petition praying that title be quieted in her.

The trial court found for the appellee establishing the express trust. We quote the material part of the decree:

"It is further hereby expressly found and adjudged by the court that during the lifetime of Frank C. Young, he was the owner of the following described real estate, situated in Davis County, Iowa, to-wit:

(description of farm property omitted)

that on or about the 12th day of November, 1932, and with the intention of making a disposition of said above described real estate during his lifetime, the said Frank C. Young and the defendant herein, entered into an agreement in writing under the terms of which the said Frank C. Young was to transfer and convey said above described real estate to the defendant herein, first reserving unto himself a life estate in and to said real estate, said real estate to be conveyed to the defendant herein for her life time, and the remainder in fee to be then conveyed to the plaintiff herein, or her bodily heirs, provided that the plaintiff herein was living at the time of the death of the defendant herein, or left bodily heirs surviving her at such time; otherwise, to become the sole property of the defendant herein. It is further found and adjudged by the court that said agreement was in writing and was fully established and proven by the evidence introduced by the plaintiff herein and that the terms and conditions thereof were identical with the terms and conditions of the copy thereof attached to the plaintiff's amended and substituted petition filed in this action; that said agreemen was never rescinded, revoked or cancelled during the lifetime of the said Frank C. Young, and still remains in full force and effect."

The defendant has appealed.

The first error argued is that Exhibit P-4, the trust agreement is void under Code section 10447, which is as follows:

"When property is owned by the husband or wife, the other has no interest therein which can be the subject of contract between them, nor such interest as will make the same liable for the contracts or liabilities of the one not the owner of the property, except as provided in this chapter."

The above section does not prohibit all transactions between husband and wife with references to their separate property, but only those that relate directly to their respective rights of dower.

In the case of Manatt v. Griffith, 147 Iowa 707, 711, 124 N. W. 753, 755, this court said:

"The statute, as construed in the cases already referred to, simply denies to either husband or wife the power to contract with the other in regard to the dower interest which each has in the other's property * * * "

The same interpretation was adopted in the case of Baker v. Syfritt, 147 Iowa 49, 60, 125 N. W. 998, 1002, where the court said:

"The only limitation imposed by statute upon their competency to contract with each other in relation to their separate estates is found in Code, section 3154 [now sec. 10447], which provides that neither has any interest in the property of the other which can be made the subject of contract between them. This restriction invalidates agreements the subject of which is the right which, by reason of the marriage relation, one of the parties has in property owned by the other. It goes no farther. * * * The inchoate rights which each has in the property of the other by virtue of their marriage are not property, and the statute wisely provides that they shall not be the subject of speculative transactions between them, but they may deal freely with each other concerning property owned by either, although the near or remote result of their dealings may be the loss or extinguishment of an inchoate right."

With the rules announced in the cited cases let us look at this record.

The farm was the separate property of Frank C. Young, he had owned it long prior to his marriage to the appellant. He desired to make a disposition thereof in his lifetime whereby he could give to his wife an estate therein for her life and the remainder in fee to his granddaughter, or the heirs of her body provided she or any heirs of her body survived his wife. To accomplish this purpose he and his wife entered into the agreement, Exhibit P-4, and at the same time Frank C. Young executed and delivered to his wife a deed conveying the property but retaining in him a life estate, which was duly recorded by the wife. Thus we find that it was not a contract dealing primarily with the inchoate right of dower of the wife in and to the separate property of her husband, and any such right that may have been affected thereby was merely an incident thereto.

In the case of Baxter, Reed & Co. v. Hecht, 98 Iowa 531, 534, 67 N. W. 407, 408, this court said:

"This provision relates to the interest which the husband or wife holds in the lands of each other, and which arises or is created under the marriage relation. It has no application to any property interest which the husband or wife may have in the land of the other, based upon contracts with third persons, or derived from sources other than the marriage relation."

So in the present case, said statute has no application as the "property interest" being dealt with in the trust agreement in question is not the dower right of the defendant in and to the farm in question, but is based upon a contract under which the wife obtained a life estate in the farm and also a contingent remainder in fee therein. This was an interest "derived from sources other than the marriage relation".

The appellant argues however that the instrument itself—Exhibit P-4—shows that the subject of the agreement was the contingent distributive share of Florence Young (now Wishard) in her husband's estate for it recites, "In lieu of her statutory rights".

The evidence in this case does not show that there had been any prior agreement between Mr. Young and his wife in regard to her dower interest. She herself testified that she went to Mr. Deupree's office at her husband's request and that she had no arrangement of any kind with Deupree about preparing any papers and did not know what they were until she got there

and the papers were read to her. The trust agreement was prepared by the scrivener in the absence of both Frank C. Young and his wife. Neither had given the scrivener any instructions to make any mention whatever in the agreement with reference to the appellant's right of dower.

The trust agreement was signed and witnessed. Frank C. Young executed and delivered the deed to his wife. The appellant executed a quitclaim deed to the granddaughter appellee, in accordance with the provisions of Exhibit P-4. This all took place November 12th. There is no evidence in this record that the question of the wife's dower interest was ever discussed or considered by Frank C. Young and his wife. The trust agreement constituted only an arrangement between the husband and wife whereby the husband was making a gift during his lifetime to his wife and granddaughter of certain specified interest in and to the farm in question and the wife accepted the deed to the farm under such terms and conditions as expressed in Exhibit P-4.

The appellant has furnished us with a very able and elaborate brief citing many cases, all of which we have given careful consideration.

We quote from appellant's summary:

"It is apparent that the General Assembly in enacting Code Section 10447 in its original form was thereby making a legislative declaration of what is considered sound public policy, to which it has adhered unswervingly through many decades, during which the Supreme Court of Iowa has construed the statute strictly, and has stood adamant to all assaults made thereon, under many and divers guises, and supported by quasi-plausible theories advanced by glib-tongued advocates."

This court as it is now composed has no desire to waver from the strict construction placed upon section 10447, and is in strict accord with the prior decisions of this court upon this all important question.

The next proposition relied upon for reversal is that the lower court erred in holding that the trust agreement had not been revoked, and that where a trust is created and accepted by the trustee, the trust is irrevocable unless the power of revocation is retained in the instrument of trust by the trustor.

Mrs. Florence Young-Wishard was the main witness, in fact

the only one who testified concerning the revocation. Her evidence was objected to as being incompetent under Code section 11257. We do not find it necessary to pass upon that question.

The appellant testified that on the 23d of November, 1932, Mr. Young telephoned to Mr. Deupree that he wanted the papers that had been signed. That they drove downtown and that while her husband was getting some gas for the auto, she went over at the request of her husband and Mr. Deupree gave her the original of Exhibit P-4 and the quitclaim deed executed to the appellee. That she returned to her husband's auto and they drove over to Centerville. Her husband consulted the firm of Valentine and Valentine, Mr. H. E. Valentine transacting the business for them. That Mr. H. E. Valentine informed them that the papers prepared by Mr. Deupree did not carry out the manner in which Mr. Young desired to leave his property and that Mr. Valentine tore up the trust agreement and the deed, and threw the scraps of paper in the wastebasket. That a deed was then prepared by Mr. Valentine transferring the property to the appellant. This deed did not reserve a life interest for Mr. Young. That the deed was dated November 23, 1932, delivered to her and recorded by her. That she had agreed with her husband to either deed the farm or leave it by will to the granddaughter (the appellee) provided the appellee was alive at the time of her death or left bodily heirs. The appellant then testified that she had made a deed and placed it in escrow and before her last marriage had an antenuptial agreement with Mr. Wishard which permitted her to deed the property.

In the case at bar the trust agreement, Exhibit P-4 and the warranty deed from Frank C. Young to the appellant, were both executed in the office of W. C. Deupree at the same time, to wit, on November 12, 1932, and must be construed as one instrument. They were completed instruments, the deed being delivered and recorded by the appellant. There is no question of fraud in this case, nor is reformation sought.

Almost every question argued by the appellant in this division of her argument has been decided adversely to her by this court in the case of Lewis v. Curnutt, 130 Iowa 423, 106 N. W. 914. In that case, the trustor, during her lifetime, executed and delivered a deed to certain real estate to a third party as trustee. The execution of this deed was accompanied by the execution of another written instrument specifying the terms

and conditions of the trust. In holding that said trust was enforcible and that the trustor, not having expressly reserved the power of revocation in the trust instrument the court said, 130 Iowa on pages 427, 428, 429, 431, 432, 433, 436, 437, 106 N. W. on page 916:

"For example, the owner of real estate may without any valuable consideration make and execute an ordinary deed of conveyance to a designated grantee, and deposit the same in the hands of a third person, to be delivered to the grantee only upon the death of the grantor, and such conveyance is held to be operative, even though made without the knowledge, or express or formal consent or acceptance of the grantee. See Foreman v. Archer, 130 Iowa [49], and the cases there cited. This is certainly true where the deposit is made without any reserve power to recall it * * *.

"The same purpose to direct and control the disposition of property beyond the life of the owner is very frequently accomplished through a trustee, who may be appointed by will, or by deed, or other suitable declaration of trust. Subject only to the condition that the purpose of the trust be not in contravention of the command or policy of the law, the right and power of the owner of property to thus dispose of it is elementary, and we need not stop here to cite authorities. * * *

"Whether the trust be created by will or by deed, if it be lawful, and the intent can be fairly ascertained from the examination of the instrument, the courts will uphold and enforce it. To that end they will not be restrained by narrow and technical rules of construction; but if the intent of the grantor or donor be apparent, even though not expressed with technical nicety, the trust will not be avoided. * * *

"The grantor laboring under no disability, and there being no claim or pretense that she was impelled by fraud, and the deed being in apt and proper form for the conveyance of title to real estate, the necessary and unavoidable effect of its execution and delivery was to convey the legal title to this property out of the grantor and into the grantee. From that moment the grantee held such title either in his own right or in trust for another. * * *

"Now the fact that a deed, conveyance, or contract postpones the time when it shall become effective to a date in the

future does not negative the idea that a present interest is thereby created in favor of the party for whose benefit it is made. The statute provides that an estate may be created to begin in the future (Code section 2917), and, while such a grant passes no present title, it does pass a present interest in the property to the grantee. Leaver v. Gauss, 62 Iowa, 314 [17 N. W. 522].

"The same may be said of a case where a deed is deposited with a third party to be delivered to the grantee on the death of the grantor. Lippold v. Lippold, 112 Iowa, 134. It is even more clearly true in respect to property devoted to a trust, the benefit of which is postponed until the death of the owner. * * *

"It needs no argument to support the proposition that the owner of land may sever the fee into a life estate and a remainder, and that he may reserve the former to himself and sell or give the latter to whomsoever he will. When he has done so, can it be said that the grantee of the remainder acquires no present interest in the land simply because he cannot come into possession and enjoyment of the property until after the grantor's death? We think no lawyer will answer this inquiry in the affirmative. And yet such would be the necessary result if the contention of the appellee here be correct. Mrs. Crockett conveyed the property by an unconditional deed, and by an accompanying instrument provided that the trustee should not come into possession or control until after her death. The legal effect of this was to create a life estate in her and a remainder in the trustee for the benefit of the cestui que trust.

"Moreover, it must be remembered that it is not necessary in any case to the establishment of a trust that any beneficial interest shall pass to the trustee. From its very nature a trust involves the idea of separation of the beneficial interest from the legal title. When a trust is executed by the delivery of a simple conveyance to the trustee, that act and instrument serve to pass an immediate present interest to the cestui que trust, no matter how far in the future the enjoyment of the benefit thus provided may be deferred. In Forney v. Remey, 77 Iowa, 549, we expressly decided that a trust by which the property should be held for the use of the grantor during her life, and after her death be converted into money and distributed by the trustee, was valid and enforcible. * * *

"But in this deed, there is neither an express nor implied

power of revocation, and nothing that the grantor and trustee could thereafter do without the consent of the beneficiaries would affect the interest or right which had passed to the latter by virtue of the original grant. * * *

"The further point against the trust is made that the beneficiaries had no notice of the provision in their favor, and that no consideration for the benefits given passed to Mrs. Crockett. This objection is unavailing. Where the purpose of the trust is meritorious, and the settlement of the trust has been perfected by the execution and delivery of a proper conveyance, no other consideration is required, and the acceptance of the gift by the beneficiary is presumed."

In the recent case of Dunn v. Dunn, 219 Iowa 349, 354, 258 N. W. 695, 697, this court again was confronted with this same question, and speaking through Chief Justice Anderson, we said:

"This language is unequivocal and completely divests the makers of the trust agreement of all interest and control over the property conveyed to the trust. There is no language used in the entire instrument which could possibly be construed as a reservation of the power to revoke, and unless the power of revocation is expressly reserved in an instrument of this kind the instrument is irrevocable. In re Estate of Podhajsky, 134 Iowa 746, 115 N. W. 590; Haulman v. Haulman, 164 Iowa 471, 145 N. W. 930; Jones v. Nicholas, 151 Iowa 362, 130 N. W. 125; Lewis v. Curnutt, 130 Iowa 423, 106 N. W. 914; In re Estate of Tolerton, 168 Iowa 677, 150 N. W. 1051; Hellman v. McWilliams, 70 Cal. 449, 11 Pac. 659."

The appellant cites and relies on the case of O'Connor v. O'Connor, 100 Iowa 476, 69 N. W. 676. That case turns upon the question of delivery, the court holding, we quote from page 480 of 100 Iowa, 69 N. W., page 677:

"There can be no doubt that there was no delivery of the deed when it was made and that it was obtained and recorded by Chris wrongfully."

In the case at bar, there can be no question but that the trust agreement and the warranty deed were entered into a part of the same transaction, and that the transaction was fully

consummated by the execution and delivery of the warranty deed by Frank C. Young to the appellant herein and by the further fact that she immediately took possession of said warranty deed under the terms and conditions of the trust agreement and recorded same. Thus the trust was created, and there being no provision therein for the revocation of same, it was irrevocable. It necessarily follows that the lower court was right, and its judgment must be and is hereby affirmed.—Affirmed.

OLIVER, C. J., and SAGER, BLISS, HALE, MILLER, and HAMILTON, JJ., concur.

RICHARDS, J., concurs in result.