# IN THE SUPREME COURT OF IOWA

No. 13–1082

Filed May 23, 2014

**VELMA J. HUSSEMANN,** By Her Next Friend and Attorney-In-Fact
MARCELLA D. RITTER,

      Appellant,

vs.

**HERBERT J. HUSSEMANN JR.** and **ROBERT J. HUSSEMANN,**
as Trustees of the HERBERT J. HUSSEMANN *INTER VIVOS* TRUST
AGREEMENT, dated June 3, 1991,

      Appellees.

---

Appeal from the Iowa District Court for Benton County, Patrick R. Grady, Judge.

A surviving spouse appeals the district court's order granting judgment on the pleadings to the trustees of the decedent's estate and denying her claim of a spousal elective share. **AFFIRMED.**

Daniel L. Seufferlein of Ackley, Kopecky & Kingery, LLP, Cedar Rapids, for appellant.

Mark E. Mossman and Amy L. Van Wechel of Mossman & Mossman, LLP, Vinton, for appellees.

**MANSFIELD, Justice**.

This conflict-of-laws case requires us to determine whose state law governs the enforceability of mutual clauses in a postnuptial agreement that waived each spouse's elective share. Two Florida residents were married in Florida in 1991. A few months later, they signed a postnuptial agreement in Florida. The agreement expressly provided that Florida law would apply. The married couple subsequently moved to Iowa in 2005. In 2012, one of the spouses died, and the other spouse sought to claim an elective share under Iowa law, notwithstanding the waiver of the share in the postnuptial agreement. The district court denied relief based on Florida law. Applying the principles of the Restatement (Second) of Conflict of Laws, we give effect to the choice-of-law provision in the agreement and hold that Florida law applies. Accordingly, we affirm the judgment of the district court.

## I. Facts and Procedural Background.

Herbert J. Hussemann Sr. and Velma J. Hussemann were married on February 7, 1991, in Florida at a time when both were Florida residents. Herbert and Velma had been married previously and had children from their prior marriages. Marcella Ritter is Velma's daughter from her first marriage, and Herbert Hussemann Jr. (Herbie) and Robert Hussemann are Herbert's children from his first marriage.

Shortly after their February 1991 marriage, when they were still Florida residents, the couple entered into a postnuptial agreement. The agreement was signed by the parties on June 3, 1991, in Citrus County, Florida. The agreement contained a separate "Statement of Assets and Liabilities" for each spouse, and it was witnessed and notarized. The agreement provided that each spouse's premarital assets would remain his or her own property, that property acquired after marriage would

become and remain the property of the party in whose name title was taken, and that the parties waived rights to spousal support or equitable division of property in the event of dissolution of marriage. The agreement further contained a provision detailing the "Disposition of Property Upon Death." Subsection B of that provision stated:

> Wife hereby waives and releases all rights in and claims against the estate of Husband on his death, including elective share, dower, family allowance, inheritance, or any spousal support or other claims or rights given by law or otherwise. Neither Wife nor Husband intend that this Agreement limit or restrict the right of Husband to make any bequest, devise or gift to Wife by Will or otherwise. Husband may elect to make a bequest, devise or gift to Wife by his Will, without invalidating this Agreement, and may thereafter change or eliminate such bequest, devise or gift by a codicil or trust amendment, or by another Will, or otherwise, without in any way affecting the continued effectiveness of this Agreement.[1]

The agreement also disclosed that Herbert had been represented by independent counsel in the negotiation of the agreement and that Velma had not been represented by counsel. A choice-of-law provision stated, "All questions relating to the validity and construction of this Agreement shall be determined in accordance with the laws of the State of Florida."

On the same day the postnuptial agreement was signed, Herbert also created an *inter vivos* trust (the Trust) into which he placed his assets. The Trust made no provision for Velma, and all residual assets were left to Herbie and Robert. Herbert was named as the settlor and trustee, and Herbie and Robert were named as successor trustees. The

---

[1]Subsection A contained a mirror provision in which Herbert waived and released the same rights and claims upon Velma's death.

Trust was not only formed in Florida, but (like the postnuptial agreement) provided that it was governed by Florida law.

Herbert and Velma continued to live in Florida for another fourteen years. In 2005, the couple moved to Belle Plaine, Iowa. They remained there until Herbert's death on September 17, 2012. Herbert died intestate.[2]

Following Herbert's death, on September 20, Velma (through her next friend and attorney-in-fact, Marcella Ritter) filed a petition claiming her spousal elective share of the Trust under Iowa Code section 633.238.[3] *See* Iowa Code § 633.238 (2011) (describing elective share of surviving spouse). The trustees answered the petition and asserted Velma had waived her rights to a spousal share under the postnuptial agreement, and the waiver was valid and enforceable under the laws of Florida, which had been selected as the controlling law in the agreement.

On February 27, 2013, the trustees filed a motion for judgment on the pleadings. Velma resisted the motion, filed her own motion for judgment on the pleadings, and argued the entire postnuptial agreement was void as violating Iowa's public policy against postnuptial agreements.

The district court issued its order on June 11. In it, the court concluded "the undisputed choice of law provision in the agreement has

---

[2]Velma indicated in her petition that Herbert died intestate. In its response, the Trust alleged a will existed and was created on the same date as the postnuptial agreement and the trust agreement. However, no will was produced as a part of the record, and the district court indicated in its order that "Herbert J. Hussemann died intestate as a resident of Benton County on September 17, 2012." For the purposes of this appeal, we will assume Herbert died intestate.

[3]The petition also sought a temporary injunction prohibiting Herbie and Robert from dissipating the Trust assets and from removing Herbert's remains from the state. These issues were later resolved by the parties and are not part of this appeal.

effectively taken the matter out of the purview of Iowa law and subsequently Iowa's public policy." The court added:

> Furthermore, accepting Plaintiff's argument declaring the entire agreement void would lead to an unfavorable consequence. Parties who[] intentionally enter into such agreements in states allowing them could simply circumvent the agreement later by bringing a claim in Iowa.

As a result, the court granted the trustees' motion for judgment on the pleadings.

Velma appealed; we retained the appeal.

**II.  Standard of Review.**

"We review a grant of judgment on the pleadings for corrections of errors at law." *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 8 (Iowa 2000). The court should grant a party's motion for judgment on the pleadings only if the uncontroverted facts stated in the pleadings, taken alone, entitle the party to judgment. *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 633 (Iowa 2002).[4]

**III.  Analysis.**

The parties do not dispute any of the facts in this case. Rather, this case turns on a legal issue—the enforceability of Velma's waiver of her spousal elective share contained in a postnuptial agreement she signed in June 1991. Neither party disputes the enforceability of the agreement under Florida law. *See* Fla. Stat. § 732.301 (1991) (providing that an elective share may be "waived by . . . the spouse by prenuptial or postnuptial agreement"). Rather, Velma argues the agreement cannot be enforced in Iowa because that would violate this state's established

---

[4]Arguably, the parties have gone beyond the pleadings. Herbie and Robert attached a copy of the postnuptial agreement to their motion. However, neither party disputes the terms of the agreement or the circumstances of its execution for purposes of appeal.

public policy against postnuptial agreements waiving a spouse's elective share.

Because suit was brought in Iowa, we apply our own choice-of-law rules. *See Cameron v. Hardisty*, 407 N.W.2d 595, 596 (Iowa 1987) (noting that when a diversity case is filed in federal court in Iowa, the court must apply Iowa choice-of-law rules). Where an agreement contains a choice-of-law provision, Iowa follows Restatement (Second) of Conflict of Laws section 187. *See Pa. Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 813 (Iowa 2002) (applying Restatement (Second) section 187 to a contractual choice-of-law provision); *Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (citing Restatement (Second) section 187 and noting that "with certain restrictions not applicable here, contracting parties can themselves determine the law which is to control"); *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 328 (Iowa 1977) (stating that "Restatement Second, Conflicts of Law, section 187, permits the parties to agree on the law to be applied to the contract in most cases so long as it does not override the public policy of a state having a materially greater interest in the transaction").

Restatement (Second) of Conflict of Laws section 187 provides in relevant part:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2), at 561 (1971). Florida law clearly does not lack a "substantial relationship to the parties or the transaction." *See id.* § 187(2)(a), at 561. So the only question is whether application of Florida law would be

contrary to a fundamental policy of [Iowa] which has a materially greater interest than [Florida] in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* § 187(2)(b), at 561. The comment to this provision suggests that a sliding scale applies. The greater the relationship of the contract to the state whose law has been chosen, the more fundamental the policy must be of the forum state:

No detailed statement can be made of the situations where a "fundamental" policy of the state of the otherwise applicable law will be found to exist. An important consideration is the extent to which the significant contacts are grouped in this state. For the forum will be more inclined to defer to the policy of a state which is closely related to the contract and the parties than to the policy of a state where few contacts are grouped but which, because of the wide dispersion of contacts among several states, would be the state of the applicable law if effect were to be denied the choice-of-law provision. Another important consideration is the extent to which the significant contacts are grouped in the state of the chosen law. The more closely this state is related to the contract and to the parties, the more likely it is that the choice-of-law provision will be given effect. The more closely the state of the chosen law is related to the contract and the parties, the more fundamental must be the policy of the state of the otherwise applicable law to justify denying effect to the choice-of-law provision.

*Id.* § 187 cmt. *g,* at 568.

Another official comment elaborates on the "rationale" for section 187:

> *e. Rationale.* Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured. Giving parties this power of choice is also consistent with the fact that, in contrast to other areas of the law, persons are free within broad limits to determine the nature of their contractual obligations.
>
> . . . .
>
> It may . . . be objected that, if given this power of choice, the parties will be enabled to escape prohibitions prevailing in the state which would otherwise be the state of the applicable law. Nevertheless, the demands of certainty, predictability and convenience dictate that, subject to some limitations, the parties should have power to choose the applicable law.

*Id.* § 187 cmt. *e,* at 565.

As we have already noted, when the Hussemanns executed their agreement in 1991, and continuing to the present, Florida has recognized the validity of postnuptial agreements waiving the spouse's elective share. *See* Sean Hannon Williams, *Postnuptial Agreements*, 2007 Wis. L. Rev. 827, 881 (2007) (cataloguing the position of states on postnuptial agreements). By contrast, over a century ago, we held that "a contract between husband and wife, with reference to her interest in his estate, is of no validity whatever." *In re Kennedy's Estate*, 154 Iowa 460, 468, 135 N.W. 53, 56 (1912). Although our legislature has authorized antenuptial agreements, it has made no such allowance for postnuptial agreements. *See* Iowa Code § 596.5(1) (providing that parties to a premarital agreement may contract with respect to various matters,

including the disposition of property upon death); *see also In re Marriage of Shanks*, 758 N.W.2d 506, 517, 519 (Iowa 2008) (reversing a district court order refusing to enforce a premarital agreement that included a waiver of the spouse's elective share).

Furthermore, Iowa Code section 597.2 provides,

> When property is owned by the husband or wife, the other has no interest therein which can be the subject of contract between them, nor such interest as will make the same liable for the contracts or liabilities of the one not the owner of the property, except as provided in this chapter.

Iowa Code § 597.2. We have previously indicated that section is to be "narrowly interpreted . . . not to limit all transactions between husband and wife, but to shield one spouse's dower interest from exploitation by the other." *In re Estate of Wulf*, 471 N.W.2d 850, 853 (Iowa 1991); *see also Young v. Young-Wishard*, 227 Iowa 431, 436, 288 N.W. 420, 423 (1939) ("The above section [now Iowa Code section 597.2] does not prohibit all transactions between husband and wife with references to their separate property, but only those that relate directly to their respective rights of dower."). Thus, there appears to be a real difference in how the parties' postnuptial agreement waiving elective shares would be treated under Florida law and under Iowa law.[5] We need to decide whose law applies.

As noted above, the Second Restatement directs us first to whether Iowa law would apply in the absence of "an effective choice of law by the parties." *See* Restatement (Second) of Conflict of Laws § 187(2)(b), at 561. Under section 188 of the Restatement (Second) of Conflict of Laws,

---

[5]We do not address whether section 633.238(1)(*d*), which eliminates the spouse's elective share in certain trust property where the surviving spouse has made an "express written relinquishment," could apply to the facts of the case, because it has not been argued here or below. *See* Iowa Code § 633.238(1)(*d*).

the test to determine whether a state's law would apply in the absence of the choice-of-law provision is the "most significant relationship" test. *Id.* § 188(1), at 575. Section 188(2) indicates courts should consider the following factors when determining which state has the most significant relationship to the contract:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 188(2), at 575.

Here it is undisputed the contract was negotiated and executed in Florida. At that time, the couple lived in Florida and most of Herbert's property affected by the postnuptial agreement consisted of intangibles (e.g., bonds, certificates of deposit, and a mutual fund).[6] It was contemplated that the contract would be performed in Florida; indeed any performance occurred in Florida for the ensuing fourteen years, until the couple moved to Iowa in 2005.[7] Under Restatement (Second) of Conflict of Laws section 188, it seems that "place of performance" primarily refers to where performance is to occur at the time of

---

[6]Velma's primary assets consisted of a mortgage receivable and life insurance. The record does not indicate what Herbert's assets were at the time of his death.

[7]For example, the agreement covered how property acquired during the marriage would be treated. We presume the parties would have performed this part of their agreement during the fourteen years they lived in Florida.

contracting, i.e., in this case Florida. *See id.* § 188 cmt. *e*, at 580 (indicating that "the place of performance can bear little weight in the choice of the applicable law when . . . at the time of contracting it is either uncertain or unknown"); *see also One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.*, 276 P.3d 1156, 1168 (Utah Ct. App. 2012) (favoring the intended place of performance at the time of contracting where there was "a discrepancy between the intended place of performance at the time of contracting and the actual place of performance").

We do not need to decide, however, whether Florida law would apply to the present dispute if there were *no* choice-of-law provision in the postnuptial agreement. *See, e.g.*, *Rivers v. Rivers*, 21 S.W.3d 117, 120–22 (Mo. Ct. App. 2000) (finding that Missouri law applies to a premarital agreement that the parties entered into in Louisiana, even though the parties lived in Louisiana for twelve years before moving to Missouri); *cf. Black v. Powers*, 628 S.E.2d 546, 549–50, 554–56 (Va. Ct. App. 2006) (applying Virgin Islands law to a prenuptial agreement executed by two Virginia residents just prior to their wedding ceremony in the Virgin Islands, although noting that "neither party argues that the law of the Virgin Islands, as it pertains to prenuptial agreements, is contrary to Virginia's established public policies").

For present purposes, we need only conclude that Iowa does not have a "materially greater interest" than Florida in the present dispute under the balancing approach adopted by the Second Restatement. *See* Restatement (Second) of Conflict of Laws § 187(2)(b) & cmt. *g*, at 561, 568. The parties entered into a contract that was valid under Florida law at a time when virtually all their ties were to Florida, and they had no connection to Iowa. The contract was signed shortly after the parties

married in Florida and reflected the financial terms that were to govern that marriage for its entire duration.  In fact the agreement states, "The parties do not intend that . . . any other event or events or change of conditions shall in any way [a]ffect or change the terms of this Agreement . . . ."  The postnuptial agreement was thus an integral component of the parties' overall marriage arrangement.[8]  Florida has a significant interest in assuring that a Florida marriage, including any accompanying agreements, is recognized and carried out in a manner consistent with its own law.

Moreover, one of the two parties to this dispute is a Trust formed in Florida under Florida law.  Not only does Velma seek to invalidate the postnuptial agreement in part, but her claim would also deny that Trust its full effect.  If she prevails, the Trust will lose assets that were transferred to it in Florida.  Florida has an interest in preserving and protecting trusts formed under its legal umbrella.

Again, we have presumed here that Iowa does not enforce postnuptial agreements that waive a spouse's elective share.  But on a spectrum of public policies, this is not at the upper end.  It is not a crime to enter into such an agreement.  There are no civil penalties.  One cannot be sued for entering into such an agreement.  At most, our courts would simply decline to enforce these agreements.  Furthermore, if the agreement had been signed shortly before rather than shortly after the parties' marriage, it would have been enforceable.  *See* Iowa Code § 596.5.[9]  Even after the parties were married, under Iowa law, they

---

[8]In an apparent scrivener's error, the agreement at one point incorporates premarital verbiage, stating that it "shall become effective only in the event that the contemplated marriage between the parties is hereafter solemnized."

[9]Some have questioned the logic of a legal distinction between prenuptial and postnuptial agreements.  *See* Sean Hannon Williams, *Postnuptial Agreements*, 2007

could have achieved the outcome of preserving their respective assets for their chosen heirs rather than for each other simply by using a different device—i.e., payable on death accounts. *See In re Estate of Myers*, 825 N.W.2d 1, 6–9 (Iowa 2012).

Additionally, we consider the Second Restatement's underlying goal of preserving justified expectations. *See* Restatement (Second) of Conflict of Laws § 188 cmt. *c,* at 578 (emphasizing the protection of "justified expectations"); *see also In re Marriage of Whelchel*, 476 N.W.2d 104, 109 (Iowa Ct. App. 1991) (citing Restatement (Second) section 6 in a conflict of laws case relating to the ownership of property acquired during marriage); Restatement (Second) of Conflict of Laws § 6(2), at 10 (identifying "the protection of justified expectations" as a factor relevant to the choice of law). In our mobile society, we doubt that parties who enter into a valid contract in their home state and live under that contract for fourteen years would expect that contract to be nullified simply because they move to another state. Most people do not consult with an Iowa probate attorney before deciding whether to move into Iowa. For all these reasons, we believe section 187 dictates the application of Florida law in the present case.

The Connecticut Supreme Court's decision in *Elgar v. Elgar* is instructive. *See* 679 A.2d 937 (Conn. 1996). In that case, a woman from New York and a man from Connecticut married. *Id.* at 939–40. Two days before the wedding, the woman—who was unrepresented—signed a prenuptial agreement prepared by the man's New York lawyer. *Id.* The agreement was executed at the lawyer's New York office and had a

Wis. L. Rev. at 879 ("[I[f prenuptial agreements are embraced by a legal system—as they are in the United States—then there is no good reason to reject postnuptial agreements.").

choice-of-law provision selecting New York law as the governing law. *Id.* at 940. When the man died two years later and his estate was admitted to probate in Connecticut, the woman challenged the prenuptial agreement, urging that Connecticut law should apply and that the agreement was invalid under Connecticut law. *Id.* at 939, 941. Applying section 187(2)(b) of the Second Restatement, the Connecticut Supreme Court rejected this position:

> In light of the referee's findings, the trial court determined that Connecticut did not have a materially greater interest than New York, so as to trigger an inquiry into the relative policy interests. We agree. Although there were significant contacts with Connecticut, including the facts that the marriage took place in Connecticut, that the decedent was a Connecticut resident, and that his estate is in probate in Connecticut, these contacts are not "materially greater" than the contacts with New York. In view of the numerous contacts, as set forth earlier in this opinion, between the parties, the agreement and the state of New York, we conclude that Connecticut does not have a materially greater interest in the enforceability of the agreement than New York. Accordingly, we conclude that the trial court properly upheld the parties' choice of New York law.

*Id.* at 944. Here too, we believe the quantity and quality of Florida contacts result in a situation where Iowa does not have a materially greater interest in the property allocation than Florida.

Likewise, in *In re Estate of Nicole-Santos*, a Florida appellate court generally applied Puerto Rico law to the validity of a prenuptial agreement executed by a couple when they resided in Puerto Rico, even though they were living in Florida at the time of the husband's death. *See* 648 So. 2d 277, 278–81 (Fla. Dist. Ct. App. 1995). The agreement provided that Puerto Rico law would govern. *Id.* at 279 n.3. Among other things, the court observed, "[J]ust because the law differs between Florida and another jurisdiction does not in itself bar application of

foreign law." *Id.* at 281. The only exception to this ruling related to the parties' home, because the court noted that under the Florida constitution, "[p]rotection of homestead from alienation cannot be waived by contract or otherwise." *Id.* at 282. The court added, "A citizen's right to homestead protection under our constitution is considered a paramount rule of public policy that would justify our departure from the otherwise applicable rule of comity." *Id.*; *see also In re Estate of Levine*, 700 P.2d 883, 887 (Ariz. Ct. App. 1985) (applying Florida law as designated in the premarital agreement rather than Arizona law to claims by children of the decedent seeking to be declared third-party beneficiaries of the agreement); *DeLorean v. DeLorean*, 511 A.2d 1257, 1261–62 (N.J. Super. Ct. Ch. Div. 1986) (applying California law to uphold a premarital agreement that was executed in California and provided for the application of California law, even though the agreement would have been unenforceable under New Jersey law); *Lupien v. Lupien*, 891 N.Y.S.2d 785, 785–86 (App. Div. 2009) (rejecting an argument that a premarital agreement was not enforceable under New York law after noting it "was signed by the parties in Massachusetts at a time when both parties resided there" and contained a Massachusetts choice-of-law clause); *Friedman v. Roman*, 885 N.Y.S.2d 740, 741 (App. Div. 2009) (honoring New Jersey choice-of-law provision in marital agreement).

## IV. Conclusion.

For the above stated reasons, we uphold the district court's determination that Florida law applies to the validity of a postnuptial marital agreement that was executed in Florida by Florida residents and that provided Florida law would govern. We therefore affirm the judgment of the district court.

**AFFIRMED.**