# IN THE COURT OF APPEALS OF IOWA

No. 20-1037
Filed November 23, 2021

**THE ESTATE OF SUSAN FARRELL, by its administrator, JESSE FARRELL, and as Representative for the claims of JESSE FARRELL, individually, JESSE FARRELL, as next friend of R.F., a minor, PEGGY MASCHKE, individually, and STEPHEN MICHALSKI, individually,**
    Plaintiff-Appellees,

**vs.**

**STATE OF IOWA; CITY OF WAUKEE; CITY OF WEST DES MOINES, IOWA; PETERSON CONTRACTORS, INC.; ROADSAFE TRAFFIC SYSTEMS, INC.; VOLTMER ELECTRIC, INC.; PAR ELECTRICAL CONTRACTORS, INC., MIDAMERICAN ENERGY COMPANY; and, KIRKHAM, MICHAEL & ASSOCIATES, INC.,**
    Defendant-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.

In this interlocutory appeal, the governmental parties seek reversal of the district court's denial of their motion for judgment on the pleadings. **REVERSED AND REMANDED.**

Robert M. Livingston and Kristopher K. Madsen of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellants State of Iowa and West Des Moines, Iowa.

Apryl M. DeLange, Alex E. Grasso, and Jessica A. Eglseder of Hopkins & Huebner, P.C., Des Moines, for appellant City of Waukee, Iowa.

Stephen D. Marso, Zachary J. Hermsen, Bryn E. Hazelwonder, and James E. Andersen of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GREER, Judge.**

Pointing to established precedent over the public-duty doctrine,[1] the State of Iowa and the cities of West Des Moines and Waukee (the Governmental Parties) theorize that the result of this case is exactly what happens when "creative plaintiffs characterize nonfeasance as misfeasance . . . to create a false duty that otherwise would be precluded by the public-duty doctrine." They ask that we take that "gray area" and make it clear by dismissing the suit against them. In this interlocutory appeal we must determine if the Governmental Parties' motion for a judgment on the pleadings should have been granted. Taking the facts alleged as true, the district court denied the motions finding that *at this stage*, the Farrell family[2] is entitled to develop if the Governmental Parties engaged in affirmative acts of negligence or if the egregious conduct exception to the public-duty doctrine applies.[3]

**Factual Background.**

A motor vehicle collision occurred in the early morning hours of March 26, 2016. Tragically, an intoxicated driver, Benjamin Beary, drove on the wrong side of Interstate 80 (I-80) head-on into a vehicle in which Des Moines police officer

---

[1] The basis of the public-duty doctrine is that "a duty [owed by the government] to all is a duty to none." *Breese v. City of Burlington*, 945 N.W.2d 12, 18 (Iowa 2020); *but see Fulps v. City of Urbandale*, 956 N.W.2d 469, 473 (Iowa 2021) ("But the colloquialism does not get to the heart of the doctrine and may suggest a broader scope to the doctrine than our cases indicate it actually has."). The doctrine precludes liability to individuals if the breach of a duty the State owes is to the public at large. *Raas v. State*, 729 N.W.2d 444, 448 (Iowa 2007).

[2] We refer to all of the plaintiffs as "Farrell family."

[3] The Farrell family did not address the egregious conduct exception in their appeal brief, so that issue is waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

Susan Farrell was riding.[4]  Both Beary and Farrell perished in the collision.[5]  After an extensive investigation, law enforcement experts determined that Beary entered I-80 at the Grand Prairie Parkway Interchange.[6]  In their petition filed against the State of Iowa and cities of West Des Moines and Waukee,[7] the Farrell family alleged that the Grand Prairie Parkway Interchange was unsafely designed and constructed.  They allege that in 2005 the cities contracted with the Iowa Department of Transportation (DOT) to design this Interchange.  The design employed a diverging-diamond interchange that requires drivers to drive on the left side of oncoming traffic for some distance.  The Farrell family contend that this design creates a confusing experience for drivers unfamiliar with the area.  According to the petition, complaints were voiced and several improvements and changes occurred over the years, but the Interchange remained open to motorists.  It was after this Interchange and on I-80 where Beary and Farrell collided.  The specific claims asserted against the Governmental Parties involve common law negligence, nuisance, and premises liability.

---

[4] At impact, it was estimated that Beary was traveling 102.91 miles per hour in the wrong direction on I-80.  At that time, he also had a blood alcohol concentration of .223 and tested positive for marijuana.

[5] At the time of the collision, Farrell was on duty transporting a prisoner to another county along with another officer.  All other occupants of the patrol car were killed in the collision as well.

[6] The "Interchange" is located at I-80 and Alice's Road between Waukee and West Des Moines.

[7] The private contractors involved in the construction of the Interchange were also named as parties to the lawsuit, but they are not involved in the interlocutory appeal issues.

To address the allegations, the Governmental Parties answered but then moved for judgment on the pleadings under Iowa Rule of Civil Procedure 1.954,[8] arguing the public-duty doctrine bars all of the Farrell family's claims. The district court denied the motion "at this stage" noting the petition alleged the Governmental Parties committed affirmative acts of negligence, including egregious conduct. Because of these allegations, the district court concluded it could not find the Governmental Parties were entitled to a judgment in their favor. The Governmental Parties appeal from that ruling.

**Standard of Review.**

We review a district court's ruling on a motion for judgment on the pleadings for correction of errors at law. *See Hussemann ex rel. Ritter v. Hussemann*, 847 N.W.2d 219, 222 (Iowa 2014). To start, we assume the truth of the facts found in the pleadings. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 914 N.W.2d 273, 280 (Iowa 2018). Then, the "district court should only grant the motion if the pleadings, taken alone, entitle a party to judgment." *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 633 (Iowa 2002). The focus is on whether there is a right to recovery under the state of facts as presented. *Stanton*, 420 N.W.2d at 482. "The proper function of a motion for judgment on the pleadings is simply to test the sufficiency of the pleadings to present an appropriate issue for trial." *Id.*

---

[8] The rule provides: "After the pleadings a party may move for judgment on the pleadings." Iowa R. Civ. P. 1.954. The rule allows parties an early decision on points of law in the pleadings. *See Stanton v. City of Des Moines*, 420 N.W.2d 480, 483 (Iowa 1988).

**Application of the Public-Duty Doctrine.**

The progress of this case turns on whether the public-duty doctrine applies. We have a playbook for that inquiry. In several recent cases, our supreme court tackled the doctrine and refined the steps for our analysis. *See Fulps*, 956 N.W.2d at 469; *Breese*, 945 N.W.2d at 12; *Johnson v. Humboldt Cnty.*, 913 N.W.2d 256 (Iowa 2018).[9] Similar to the *Fulps* case, we address the arguments at this preliminary stage of the proceedings but look to the allegations of the petition and assume they are true.[10] 956 N.W.2d at 470. With that being said, we are asked to apply the public-duty doctrine to address the challenge that the doctrine precludes tort claims by these individuals against the government. *See Johnson*, 913 N.W.2d at 258–62 (holding the public-duty doctrine barred a claim against the county by the injured passenger after a driver fell asleep, drove off a county road and into a ditch, and struck a privately owned concrete embankment). In *Johnson*, the county was sued for failure to cause the removal of the embankment from the right of way. *Id.* at 259–60. Thus, the public-duty doctrine has applied in cases involving a duty the state owes to maintain safe public roadways because it is a duty the state "owes to the public at large." *Id.* at 261.

---

[9] We note the district court did not have the benefit of *Fulps*. Because *Fulps* was decided after the briefing here, the parties asked to provide supplemental briefing, which was very helpful to our effort.

[10] We assume for purposes of this opinion that the Farrell family was correct in characterizing the Governmental Parties as being "responsible" for the design, construction, inspection, development, maintenance, and repair of the Interchange project, as alleged in their petition.

*Does the public-duty doctrine apply here?*

There is a fundamental difference of opinion between these parties about the approach required to answer this question. The Governmental Parties argue that the public-duty doctrine bars all of the Farrell family's claims after we answer the preliminary question—what instrumentality caused the injury ("instrumentality test")? Because Farrell was injured because of the government owned and designed "diverging-diamond interchange" while in the line of duty transporting a prisoner, the Farrell family asserts the public-duty doctrine cannot apply. They advocate the first step requires a "misfeasance/nonfeasance" analysis.

As *Fulps* confirmed, the public-duty doctrine "comes into play only when there is a confluence of two factors." 956 N.W.2d at 473.

> First, the injury to the plaintiff was directly caused or inflicted by a third party or other independent force. Second, the plaintiff alleges a governmental entity or actor breached a uniquely governmental duty, usually, but not always, imposed by statute, rule, or ordinance to protect the plaintiff from the third party or other independent force.

*Id.* at 473–74. If the answers to these questions are yes, then the public-duty doctrine applies. But, even so, if there exists a special relationship between the governmental entity and the injured party, the public-duty doctrine is negated. *See id.* at 474.

Here the instrumentality starts and ends with an intoxicated Beary driving on the wrong side of the road into Farrell's vehicle, ultimately killing her. Unlike *Breese*, where a party was injured on the city bike path with no other instrumentality involved apart from the city's negligence with respect to its bike path, third-party Beary's behavior caused the death of Farrell. 945 N.W.2d at 21.

Likewise, in *Fulps*, the plaintiff was injured due to the condition of the city-owned sidewalk. 956 N.W.2d at 470–71.

Then, as to the second question, is the construction of safe roadways a "uniquely governmental duty . . . to protect [Farrell] from the third party or other independent force," we again look to our case law precedent. In instances involving the public roadways, the state's safety-related duties are owed to the general public. *See Johnson*, 913 N.W.2d at 261 (confirming that public-duty doctrine applies even when highway safety is involved as the duty to remove obstructions from a right-of-way corridor adjacent to the highway is a duty owed to all users of the public road); *see also Estate of McFarlin v. State*, 881 N.W.2d 51, 58–63 (Iowa 2016) (holding the State's safety-related duties at the public lake open to everyone were owed to the general public and thus, "there is no liability to an individual member of that group").

Yet, the Farrell family argues the roadway design directly caused the accident. They contend the Governmental Parties should have protected Farrell from Beary's actions by designing and constructing a safe Interchange, which they allege did not happen here. *Fulps* did not discard the public-duty doctrine, but instead narrowed the situations where it still would apply.

> *The public-duty doctrine is properly understood as a limit on suing a governmental entity for not protecting the public from harm caused by the activities of a third party*. Those third parties have included the visually impaired driver in *Kolbe* [*v. State*, 625 N.W.2d 721 (Iowa 2001)], the inmates after they got away from the prison in *Raas*, the dredge operator in *Estate of McFarlin*, the private property owner who put up the concrete embankment in *Johnson*, and the shooter in *Sankey* [*v. Richenberger*, 456 N.W.2d 206 (Iowa 1990)]. *See Breese*, 945 N.W.2d at 21 ("What is clear is that we have generally applied the public-duty doctrine when the allegation is a government failure to adequately enforce criminal or regulatory laws

> for the benefit of the general public, as in *Raas*, *Kolbe*, and *Sankey*, *or a government failure to protect the general public from somebody else's instrumentality*, as in *Johnson* and *Estate of McFarlin*.").

*Fulps*, 956 N.W.2d at 475 (emphasis added).

The Farrell family posits that the nonfeasance/misfeasance distinction defines the application of the public-duty doctrine and we should not just simply apply the Governmental Parties' "instrumentality of harm" test. Characterizing the road construction as an affirmative act performed negligently, they attempt to hold the Governmental Parties "liable for their own property and work . . . on the Interchange." *Fulps*, 956 N.W.2d at 474–75; *accord Fulps*, 956 N.W.2d at 470 (finding in the context of a "defectively constructed or poorly maintained sidewalk[]" the "governmental entity is simply being held legally responsible for its own property and work"). Because they label the Governmental Parties' actions as "misfeasance," they urge the doctrine is inapplicable. "Misfeasance" in the context of the public-duty doctrine is when the governmental unit "negligently acts and causes harm." *Breese*, 945 N.W.2d at 20. And in *Johnson*, the supreme court confirmed, "This does not mean the same no-duty rule would protect that [governmental] entity when it affirmatively acts and does so negligently." 913 N.W.2d at 267 (citing with approval *Skiff v. State*, 479 N.Y.S.2d 946, 951 (N.Y. Ct. Cl. 1984), which found "the state could be liable when a vehicle left a state road and traveled along a drainage ditch into an earthen headwall where the ditch was 'created by the State' and 'constituted a trap or snare'"). The Farrell family labels the affirmative act of constructing the "first-of-its-kind" diverging-diamond Interchange without the proper safety protections as the misfeasance to be considered. Yet, "the term 'nonfeasance' refers to a failure to discharge a

*governmental* duty for the benefit of the public—typically, 'a government failure to adequately enforce criminal or regulatory laws for the benefit of the general public . . . or a government failure to protect the general public from somebody else's instrumentality.'" *Fulps*, 956 N.W.2d at 475–76 (quoting *Breese*, 945 N.W.2d at 21). Recent cases applying the public-duty doctrine involved a third-party instrumentality or, as here, failure to address a third-party hazard. *Compare McFarlin*, 881 N.W.2d at 64 (State failed to protect party from dredge pipe installed by third-party contractor on State property) *and Johnson*, 913 N.W.2d at 261–62 (State failed to protect driver from a concrete embankment in a State right of way that was installed by property owner), *with Breese*, 945 N.W.2d at 21 (pedestrian injuries caused by the sidewalk condition).

The path the district court took when it denied the motion for judgment on the pleadings was similar to the analysis offered by the Farrell family. The district court noted the Farrell family alleged the Governmental Parties engaged in "affirmative acts of negligence" and raised conduct that was "grossly negligent in certain particulars." Even so, the petition frames the failure of the Governmental Parties as neglecting to protect a member of the general public from a third-party's instrumentality of harm because of the Governmental Parties' design and construction of the Interchange and the installation of safety markings and signage. Still, "the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place." *Raas*, 729 N.W.2d at 448 (citation omitted). Because the public-duty doctrine hinges on a no-duty determination, the legal question of its application should be based on "articulated policies or principles that justify exempting actor from liability" and should not "depend on foreseeability of harm

based on the specific facts of a case." *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 cmts. i, j (Am. Law Inst. 2010); *cf. Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009) ("A goal of the Restatement (Third) was to clear away prior confusion between the duty determination and the negligence determination."). Here, the Farrell family's complaints depend upon a foreseeability determination that the design of the Interchange lead to the collision with the drunk driver. That exercise cannot be utilized in a no-duty determination, thus the instrumentality of harm analysis is properly employed.

To recap, the facts, as alleged in the petition, support the *Fulps* confluence of factors that triggers the public-duty doctrine. At the end of the day, the allegations in the petition center on the "government failure to protect the general public from somebody else's instrumentality." *Breese*, 945 N.W.2d at 21. We find the doctrine applies. We next look to the exceptions the Farrell family asks us to invoke.

*Is there a special-relationship exception to the public-duty doctrine because Farrell was a police officer?*

Once we hold that the public-duty doctrine applies, we then and only then inquire if a special relationship between Farrell and the Governmental Parties exists such that there is an exception to the general rule that public duties owed to the public at large may not provide a basis for liability. *See Cope v. Utah Valley State Coll.*, 342 P.3d 243, 253 (Utah 2014) (mentioned in *Breese*, 945 N.W.2d at 20–21). The Farrell family argues Farrell's use of the roadway as a law enforcement officer removed her from the category of "public-at-large."

The district court found no special relationship existed and that, even as a police officer, Farrell was owed no particular duty by the Governmental Parties separate from that of the public at large. Under the Farrell family's common law claim of negligence, Farrell had to have membership in a special, identifiable group for whose benefit statutes were enacted—none apply here. *See Kolbe*, 625 N.W.2d at 729–30. But, the duties ascribed to the government in the petition—constructing safe roads—are for all roadway users and are not specific to the use of only Farrell, even in her role as a law enforcement officer. Our roadways are not constructed as a special benefit for law enforcement officers and thus, they do not operate vehicles on them with any special status over and above the general public. We look to the duty imposed and here, the duty is to all users of the roadway including all people in all occupations—if the duty were to a specific sub-set of the population, then a special relationship might exist. "Only when the duty is narrowed to the injured victim or a prescribed class of persons does a tort duty exist." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 reporter's note cmt. g, at 93–94 (Am. L. Inst. 2010). Motorists are "a general class that is not afforded a special relationship with the State." *Johnson*, 913 N.W.2d at 260; *see also McFarlin*, 881 N.W.2d at 61 (applying the public-duty doctrine involving a boating accident on a public lake because "[b]oaters . . . , like motorists driving on Iowa roadways, are members of the general public . . . for purposes of the public-duty doctrine"). Under the public-duty doctrine, a duty owed to the public generally does not allow liability for the benefit of an individual of that same group. *Johnson*, 913 N.W.2d at 260. Thus, we find this exception cannot apply under these facts to avoid the application of the public-duty doctrine.

*Do these governmental actions invoke the exception to the public-duty doctrine for public reliance on government carrying out actions in a proper manner?*

Here, the Farrell family illustrates their position with this scenario:

An example of conduct that induces reliance is the case of a city that provides crossing guards for children walking to school. If such conduct induces parents to rely on such guards, the city owes a duty of reasonable care to continue the guards and is consequently subject to liability for the death of a child in an unprotected crossing when it unilaterally withdraws guards without notice.

Dobbs, Hayden & Bublick, *The Law of Torts* § 346 (2d ed. 2021). The family argues the Governmental Parties pushed the new design as "a particularly safe interchange design," thereby creating reliance on the public that safety protocol and contractually required safety features were in place. We are directed to other jurisdictions to find the required showing for such an exception. The district court found no Iowa authority for a public reliance exception to the public-duty doctrine, nor do we. In *Kent v. City of Columbia Falls*, 350 P.3d 9, 14 (Mont. 2015), the Montana Supreme Court held that for application of the public reliance exception, a party must show: (1) direct contact between the public official and plaintiff, (2) the public official provided express assurance in response to a specific inquiry by plaintiff, and (3) the plaintiff was justified in reliance upon the public official representations. The Farrell family acknowledges this exception theory is based on facts asserted that are outside the confines of the petition. We agree and find that, even so, the facts pled do not support consideration of this exception.

**Application of the Iowa Tort Claims Act (ITCA) and the Municipal Torts Claim Act (MTCA).**

The Farrell family invites us to rule that the enactment of ITCA and MTCA requires we abandon the public-duty doctrine and that those acts operate to make

the State and its cities liable for their torts to the same extent as private individuals. *See* Iowa Code §§ 669.4(2), (3), 670.2(1) (2019); *see also Fulps*, 956 N.W.2d at 476 (Appel, J., concurring) ("I again express my view . . . that the public-duty doctrine is simply a version of sovereign immunity and that the legislature has dealt with the issue through enactment of the [ITCA] and the [MTCA]."). Still, this is not the first time that this call has been made. *See Raas*, 729 N.W.2d at 449 ("Although . . . other jurisdictions have held their tort claims statutes to have abrogated the public-duty doctrine in those jurisdictions, we conclude that both [ITCA and the public-duty doctrine] are alive and well in Iowa."). And the most recent case addressing the doctrine, *Fulps*, does not take that path, so neither shall we. "[W]e are not at liberty to overturn precedent of our supreme court." *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011). To put it simply, the public-duty doctrine is still "alive and well in Iowa." *See Johnson*, 913 N.W.2d at 264 (quoting *Raas*, 729 N.W.2d at 449).

**Conclusion.**

Finding the public-duty doctrine applies to the claims against the Governmental Parties on all claims, we reverse the district court and remand for entry of judgment in favor of all Governmental Parties. *See id.* at 266 (noting the public-duty doctrine operated to prohibit claims of negligence, premises liability, and nuisance—"'[n]o liability' includes these other tort claims").

**REVERSED AND REMANDED.**