**IN THE COURT OF APPEALS OF IOWA**

No. 16-0989
Filed August 2, 2017

**IN RE THE MARRIAGE OF GARY E. ERLANDSON
AND SUSAN KAY ERLANDSON**

**Upon the Petition of
GARY E. ERLANDSON,**
        Petitioner-Appellant,

**And Concerning
SUSAN KAY ERLANDSON,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Gary Erlandson appeals from the economic provisions of the decree dissolving his marriage to Susan Erlandson.  **AFFIRMED.**

Erin Patrick Lyons of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Heather A. Prendergast of Roberts, Stevens & Prendergast, P.L.L.C., Waterloo, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

We must decide whether a separation decree controls the disposition of property and spousal support in a subsequent dissolution proceeding.

## I.    *Background Facts and Proceedings*

Gary and Susan Erlandson married in 2001. They separated after nine years and formalized their status in a "stipulation for separation" prepared by Susan's attorney.[1] The stipulation stated "[e]ach party shall receive those items of real and personal property, household goods, and furnishings currently in their possession." It granted Susan the parties' home, required her to shoulder the mortgage, and held Gary responsible for a home equity loan of $23,000. The stipulation stated, "If the parties should continue on and file a dissolution of marriage action, Gary agrees that he will remain responsible for this loan and have said loan transferred to his name only."

The stipulation divided the parties' pensions as follows:

Susan is awarded all rights and interests in any pension plan, 401k plans and/or any other retirement plan, with no rights or interest in Gary. Susan shall be awarded one-half interest in any pension plan, 401K plans and/or any other retirement plan.

Finally, the stipulation contained two provisions explaining the import of the document:

---

[1] The stipulation stated:

> **REPRESENTATION OF PETITIONER.** Gary has been advised that he should retain counsel if he has any questions regarding this matter and that [the attorney] represents only Susan and that Susan's interests may be different than Gary's interests in this matter.

Postnuptial agreements are not governed by the same standards as prenuptial agreements. *Cf. In re Marriage of Shanks*, 758 N.W.2d 506, 511 (Iowa 2008) (stating premarital agreements are not enforceable under certain specified circumstances (citing Iowa Code § 596.8 (2007))).

**5. COMPLETE SETTLEMENT.** This Stipulation for Separation shall be a complete settlement of the rights and obligations of the parties to each other.

. . . .

**18. DISSOLUTION OF MARRIAGE.** The parties agree that if this matter should continue and proceed to a dissolution of marriage, that the above agreement and Stipulation for Separation shall remain in effect.

After the stipulation was executed and presented to the district court, the court filed a "decree for separation" ordering the parties "legally separated." The court further "ordered and decreed" that "each and all of the terms, provisions, and agreements . . . contained in the Stipulation for Separation . . . is hereby ratified, confirmed, and approved and made a part of this Decree . . . as though fully set out herein and judgment is entered accordingly."

The Erlandsons reconciled for several years but maintained separate finances. In time, Gary petitioned for a dissolution of the marriage.[2] Following trial, the district court filed a dissolution decree finding paragraph 18 of the stipulation—providing for the stipulation's continued effect in the event of a dissolution—"equitable." The court disposed of the home in accordance with the stipulation. As for the pensions, the court granted Susan "one-half" of Gary's military pension "per the *Benson* formula, when and if [Gary] becomes eligible to draw retirement pay."[3] The court subsequently filed an "order to divide military retired pay."

The court next turned to spousal support. After acknowledging the stipulation did "not directly address alimony" and "reflect[ed] that each expects

---

[2] Gary was ordered to pay temporary spousal support of $600 per month after the dissolution petition was filed.

[3] *See In re Marriage of Benson,* 545 N.W.2d 252, 255 (Iowa 1996).

the other will take care of his or her own future needs," the court awarded Susan temporary spousal support of $400 per month until December 31, 2018.[4]

Gary appealed.

## II.     *Property Distribution*

Gary contends the district court "did not divide the marital property in this case equitably." He notes that Susan was granted "exclusive right to her own retirement funds," as well as "a substantial portion of [his] retirement funds, and the home," while he was held responsible for the home equity loan. He proposes Susan assume responsibility for the home equity loan and the parties retain their own retirement funds.

Susan counters that the stipulation resolved any property distribution questions and Gary cannot now attempt to collaterally attack that judgment or seek a modification of the property distribution scheme encompassed within it. In her view, the court could not even add language requiring division of Gary's pension pursuant to the *Benson* formula because the stipulation "specified that the pension rights were to be divided equally between the parties."

Gary responds that Susan did not file a cross-appeal from the portion of the district court's dissolution decree adding the *Benson* formula and, accordingly, she cannot now challenge the court's method of dividing the pension.

---

[4] The court also imposed a child support obligation based on current financial data, added health insurance language that was not in the stipulation, and alternated the dependency exemption between the parties even though the stipulation granted Susan this exemption.

We must first determine what the stipulation is. "Under Iowa law, married spouses can legally separate by filing a petition for separate maintenance as provided in Iowa Code section 598.28 [(2015)] without dissolving their marriage." *In re Estate of Whalen*, 827 N.W.2d 184, 185 (Iowa 2013) (citing 2 Marlin M. Volz, Jr., *Iowa Practice Series, Methods of Practice* § 31:31, at 869 (2012)); *see* Iowa Code § 598.21(1) (prefacing provision on disposition of property with, "Upon every judgment of annulment, dissolution, or separate maintenance, the court shall divide the property of the parties . . ."). The order approving the stipulation was styled a "decree for separation" rather than a "separate maintenance" decree. But it served the same purpose as a statutory separate maintenance decree, "which permits the court . . . to decide the identical property issues that are adjudicated in dissolution actions." *In re Estate of Carlisle*, 653 N.W.2d 368, 372-73 (Iowa 2002) (Ternus, J., dissenting). We conclude the "decree of separation" was, in effect, a statutory "separate maintenance" decree. *See In re Marriage of Kurtz*, 199 N.W.2d 312, 314 (Iowa 1972) (distinguishing common law separate maintenance decree from statutory separate maintenance decree).

We turn to Susan's argument that the dissolution court exceeded the parameters of the separation decree by making reference to the *Benson* formula and Gary's argument that Susan needed to file a cross-appeal to raise this issue. The dissolution court specified a method for dividing the pension because the stipulation was silent on this issue. Although the stipulation stated, "Susan shall be awarded one-half interest in any pension plan," it did not specify when the

one-half interest would be determined or how.[5]  The dissolution court simply filled in the blank by stating the military pension would be divided pursuant to the *Benson* formula.  The formula would have accounted for the share of the pension allocated to Susan, in this case fifty percent.[6]  *See Benson*, 545 N.W.2d at 255. We conclude the dissolution court did not impermissibly modify the stipulated property disposition by adding a method of division, as Susan contends.  We further conclude Susan's failure to file a cross-appeal from the dissolution court's addition of a reference to the *Benson* formula does not prevent her from arguing the language of the stipulation is controlling—an argument that is responsive to Gary's appeal of the property distribution.[7]

We are left with the language of the stipulation.  By its terms, the stipulation controls the disposition of property in a subsequent dissolution action:

---

[5] At the dissolution trial, Gary's attorney stated, "[The separation agreement] says she will get 50 percent—half of his pension, but half of what would have been its value at that time or is it half of what he would receive if he remained in the military for another nine-and-a-half years at this point in time.  Because when they separated, he had less than four years of—when the separation agreement was written, he had less than four years of active duty time."  Gary argued for a fifty-percent division as of the date of the stipulation, as follows:

> Q. [GARY'S ATTORNEY] And the—what you're asking the court to do is . . . divide things as of their value on January 10 of—January 2010 when the separation agreement is and that way she would only receive approximately 10 percent of any pension; is that correct?  A. [GARY] Right.

[6] The military order implementing the pension provision of the dissolution decree did not contain the formula set forth in *Benson.*  It included the following language:

> [Susan] is entitled to 50% of [Gary's] Disposable Retired Pay or Retainer Pay. . . .  It is further stated that the date of the marriage is January 20, 2001 and that they are divorced herein on [March 30, 2016].  The parties have been married for more than ten (10) years during Member's creditable military service."

This provision was in line with what Susan requested at trial:

> Q. [SUSAN'S ATTORNEY]: Are you asking [the district court] enter an order stating you be awarded 50 percent of Mr. Erlandson's disposable retired pay?  A. [SUSAN] Yes.

[7] Her failure to file a cross-appeal would preclude her from attempting to gain a greater than fifty-percent share of Gary's pension, but this is not what she is requesting.

"The parties agree that if this matter should continue and proceed to a dissolution of marriage, that the above agreement and Stipulation for Separation shall remain in effect." *See also* Iowa Code § 598.21(7) (stating a property division under chapter 598 is "not subject to modification").

The stipulation unambiguously provides that the home will go to Susan, subject to her assumption of the mortgage, and Gary is responsible for the home equity loan. The district court adhered to this disposition in its dissolution decree. Gary is foreclosed from now arguing the disposition of the home is inequitable. We affirm the dissolution decree's provisions on the home.

The stipulation's pension provision is less clear. As noted, it states: "Susan is awarded all rights and interests in any pension plan, 401k plans and/or any other retirement plan, with no rights or interest in Gary. Susan shall be awarded one-half interest in any pension plan, 401K plans and/or any other retirement plan."

At first blush, the first and second sentences of this provision seem contradictory, with the first affording Susan "all" rights in "any" pension and the second awarding her "one-half interest in any pension." But the first sentence ends with the clause, "with no rights or interest in Gary." We believe this clause limits the first part of the sentence to Susan's pension accounts. The second sentence applies to all other pension accounts, namely those in Gary's name. This reading is consistent with the provision affording "[e]ach party . . . those items of real and personal property, household goods, and furnishings currently in their possession." We conclude the stipulation grants Susan her entire pension and a one-half interest in Gary's pension.

The district court followed this disposition. Although the court did not expressly award Susan her own pension, the court stated each party would receive "those items of real and personal property, household goods, and furnishings currently in his or her possession." The court also stated Susan would receive "one-half of" Gary's military pension. The separation decree previously approved the agreed method of distributing the pensions. Gary cannot now challenge the disposition of the pension as inequitable. We affirm the dissolution court's division of the pensions.

### III.    *Spousal Support*

The district court ordered Gary to pay Susan temporary spousal support of $400 per month until December 2018. Gary argues, "[I]f Susan did not need alimony at the time of the . . . 2010 separation, and if [she] has continued to keep her finances entirely separate from [his] since that time, . . . then there should be no need for an award of alimony . . . now." He also argues the award was inequitable based on Susan's circumstances at the time of the dissolution trial.

As noted, the stipulation did not expressly address spousal support, but it could have, because our statutory provision on spousal support in a divorce proceeding, allows support payments "[u]pon every judgment of . . . separate maintenance." *See id.* § 598.21A. The question here is whether the dissolution court could order spousal support where the stipulation was silent on spousal support but stated, "This Stipulation for Separation shall be a complete settlement of the rights and obligations of the parties to each other."

This language would appear to foreclose a later award of spousal support. But the language must be read in light of our State's public policy. If we were

dealing with a prenuptial agreement rather than a postnuptial agreement, the agreement could not adversely affect spousal support. *See id.* § 596.5 ("The right of a spouse or child to support shall not be adversely affected by a premarital agreement."). And if we were dealing with a postnuptial agreement purporting to affect a spouse's elective share on the other spouse's death, the agreement would not be enforceable. *Cf. Hussemann ex rel. Ritter v. Hussemann*, 847 N.W.2d 219, 224, 226 (Iowa 2014) ("[O]ver a century ago, we held that 'a contract between husband and wife, with reference to her interest in his estate, is of no validity whatever'" and "we have presumed here that Iowa does not enforce postnuptial agreements that waive a spouse's elective share."). Because section 598.21A permits spousal support awards in separate maintenance decrees and our State's public policy in other contexts looks askance at agreements waiving these types of support, we conclude the "complete agreement" language contained in the parties stipulation did not foreclose a subsequent award of spousal support in a dissolution decree.

We turn to Gary's argument that the spousal support award was inequitable, given Susan's financial circumstances at the time of the dissolution decree. The district court provided the following rationale for the support order:

> [Susan] has enrolled in Kaplan University and expects to graduate in 2017. The Kaplan University exhibit reflects that given the cost and Pell grants, [Susan] will be able to meet the expenses of her education except for approximately $3500 each year. After she graduates Kaplan University in 2017, [Susan] should be able to better provide for herself without a permanent need for alimony. The court will award temporary alimony of $400 per month until December 31, 2018.

Our standard of review requires us to give the district court "considerable latitude in determining spousal support." *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Although our review is de novo, we "will disturb that determination only when there has been a failure to do equity." *Id.*

Susan received a generous share of the property, militating against a spousal support award. *See* Iowa Code § 598.21A(1)(c). But the award was temporary and was geared towards enhancing her long-term earnings, which were significantly lower than Gary's after considering his non-taxable military allowances. Under these circumstances, we conclude the limited award did not work an inequity on Gary. We affirm the amount and duration of the district court's spousal support award.

## IV.    *Appellate Attorney Fees*

Susan seeks an award of appellate attorney fees. An award is discretionary. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Given the significant amount of property Susan received, we decline to require any payment by Gary toward her appellate attorney fee obligation.

**AFFIRMED.**