MANSFIELD, Justice.
I. Introduction.
This case involves a single-vehicle accident that occurred when a vehicle went off a county road and into a ditch, then struck a concrete embankment in the ditch. The embankment had been constructed by a private landowner. It was on the private landowner's land, although the county had a right-of-way easement where part of the embankment was located.
A passenger in the vehicle sustained serious injuries. She sued the county and the current landowner seeking recovery. She alleged the county should have caused the removal of the concrete embankment from the ditch. The district court denied summary judgment to the landowner but granted it to the county based on the public-duty doctrine. The plaintiff appealed.
On our review, we are guided by our recent decision in Estate of McFarlin v. State , 881 N.W.2d 51 (Iowa 2016). There we held that the public-duty doctrine barred a claim against the State of Iowa relating to the placement of and lack of warnings on a dredge pipe in a recreational lake owned and managed by the state. Id. at 58. A boater struck the dredge pipe, resulting in fatal injuries to one of the boat's passengers. Id. at 53. Estate of McFarlin reaffirmed our earlier public-duty precedents and also held that the doctrine remains good law under the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. Id. at 60. Based on Estate of McFarlin , we affirm the district court's grant of summary judgment.
II. Facts and Procedural Background.
At approximately 2:30 a.m. on March 3, 2013, David Helmers and Kaitlyn Johnson, who at that time was Helmers's spouse, were traveling on a county road in Humboldt County in a Chevy Silverado pickup. Helmers was driving. He fell asleep at the wheel, and the vehicle crossed the other *259 side of the road and then veered into a roadside ditch. Helmers never applied the brakes, and the vehicle continued in the ditch for over 200 feet before it struck a concrete embankment in the ditch. Johnson suffered serious injuries in the accident, including paralysis and brain damage. The car was traveling approximately 58 miles per hour when it hit the embankment.
The embankment had been built by Donald Becker and his father-in-law in 1972. It was part of a cattle grid that allowed people and their vehicles, but not livestock, to cross the ditch at that spot. The embankment and the grid were entirely on the Beckers' private property, although most of the embankment fell within the county's right-of-way easement relating to the road.
On December 31, 2014, Johnson filed suit against Humboldt County and the current landowners, Donald and Sandra Becker. Johnson alleged that the County was negligent in failing to cause the removal of the embankment. She relied on general negligence principles, premises liability, public nuisance, and Iowa Code sections 670.2 and 318.4. See Iowa Code § 670.2 (2013) ("Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties...."); id . § 318.4 ("The highway authority shall cause all obstructions in a highway right-of-way under its jurisdiction to be removed.").
An initial summary judgment motion filed by the County was denied. Later, the County filed a second motion for summary judgment, specifically raising the public-duty doctrine.
Following a hearing, the district court granted the County's second motion on September 23. The court reasoned that Johnson's claims against the County arising out of this incident were barred by the public-duty doctrine, which does not allow individuals to sue the government for breach of a duty owed to the public at large. As the court explained,
The Iowa Supreme Court has often found, consistent with the common law public duty doctrine, that a breach of duty owed to the public at large is not actionable unless the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the municipality and the injured plaintiff consistent with the rules of Restatement (Second) of Torts, Section 315.... Further, given the State's adoption of the Restatement (Third), the Iowa Supreme Court recently held 'the public-duty doctrine remains good law after our adoption of the Restatement (Third) of Torts.' Estate of McFarlin v. State , 881 N.W.2d 51, 60 (Iowa 2016). Therefore, the public duty doctrine remains good law in Iowa, despite the State's adoption of the Restatement (Third).
The pivotal issue in this case is whether the duty owed by Humboldt as the highway authority to remove obstructions in highway right-of-ways, a duty owed to the public at large, could also be construed as a duty to Johnson as a member of a special identifiable class. Based on a plain language reading of Section 318.4, it is clear that the statute does not identify Johnson as a member of a special protected class. Simply stated, Johnson did not have a common law special relationship with Humboldt that could support a finding of duty. ...
....
Section 318.4 charges Humboldt with a duty to protect the general users of Iowa roadways from obstructions in the highway right-of-ways. Since the Iowa *260 Supreme Court has clearly found motorists to be a general class that is not afforded a special relationship with the State, all of Johnson's allegations stemming from Humboldt's failure to perform its duties under Section 318.4 are not actionable. Therefore, Humboldt's Motion for Summary Judgment is granted.
Johnson appealed, and we retained the appeal.
III. Standard of Review.
"We review a district court's ruling on summary judgment for correction of errors at law." Estate of McFarlin , 881 N.W.2d at 56 (quoting Thomas v. Gavin , 838 N.W.2d 518, 521 (Iowa 2013) ). "The evidence is viewed in the light most favorable to the nonmoving party." Id . (quoting Mueller v. Wellmark, Inc. , 818 N.W.2d 244, 253 (Iowa 2012) ).
IV. Analysis.
A. The Public-Duty Doctrine. "Under the public-duty doctrine, 'if a duty is owed to the public generally, there is no liability to an individual member of that group.' " Id. at 58 (quoting Kolbe v. State , 625 N.W.2d 721, 729 (Iowa 2001) ). "[A] breach of duty owed to the public at large is not actionable unless the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the [governmental entity ] and the injured plaintiff ...." Kolbe , 625 N.W.2d at 729. We have applied this doctrine on various occasions to preclude tort claims by individuals against the government.
In Kolbe , we held that the doctrine precluded a negligence claim against the state for its issuance of a driver's license to a driver with a congenital visual impairment. Id . at 729-30. The driver struck a bicyclist, severely injuring him. Id . at 724. We rejected the bicyclist's assertion that the state owed him a duty as a member of a "particularized class-rightful users of the Iowa roads." Id. at 728, 729-30. We found instead that the licensing provisions in chapter 321 of the Iowa Code were for the benefit of the public at large and thus the plaintiff could not "avoid the preclusive effect of the public duty doctrine by claiming membership in a special, identifiable group for whose benefit the statutes were enacted." Id. at 729-30.
In Summy v. City of Des Moines , we again examined the public-duty doctrine, this time finding that it did not apply based on the facts of that case. 708 N.W.2d 333, 344 (Iowa 2006), overruled on other grounds by Alcala v. Marriott Int'l, Inc. , 880 N.W.2d 699, 708 & n.3 (Iowa 2016). In Summy , a golfer who was golfing on a city-owned golf course was struck by an errant golf ball. Id . at 335. He challenged the design of the golf course, alleging there was an unreasonable danger that a golfer playing the eighteenth hole would be struck by tee shots from the first hole. Id . at 336. We held the public-duty doctrine did not apply because the duty at issue "was one owed to invitees on the golf course, not to the public at large." Id. at 344.
In Raas v. State , we considered the public-duty doctrine in the context of claims brought by two individuals who were injured by inmates who had escaped from the Iowa Medical and Classification Center in Oakdale. 729 N.W.2d 444, 446 (Iowa 2007). One of the individuals was attacked while in the parking lot of the facility; the other while fishing in the Iowa River some distance away. Id . at 446. We found that the plaintiff who was "lawfully in the parking lot of the Oakdale Facility ... that day during the regularly scheduled visiting hours" had status "as an invitee," so the public-duty doctrine did not apply. Id . at 450. The other plaintiff's *261 claim, however, was subject to the public-duty doctrine, as he was "only a member of the public at large." Id. We emphasized that the public-duty doctrine was "alive and well in Iowa." Id. at 449.
Most recently, in Estate of McFarlin , we again reexamined and applied the doctrine. 881 N.W.2d at 64 (affirming the district court's grant of summary judgment based on the doctrine). We found that the plaintiffs' claims arising out of a boating accident in which a boat struck a submerged dredge pipe on a state-owned and state-managed lake were precluded by the doctrine. Id. at 53, 64. We found Kolbe rather than Summy to be the relevant precedent:
Golfers pay to use the Waveland Golf Course as business invitees. The city was both landowner and proprietor operating Waveland as a business for paying customers. Golfers proceed through the course in small groups, hole-by-hole in sequence. Members of the general public are not allowed to wander freely around Waveland while golfers are playing. By contrast, Storm Lake is open to the public free of charge. Boaters may traverse the lake freely and come and go as they please, like motorists using public roads. ...
This case is more like Kolbe than Summy . In Kolbe , we applied the public-duty doctrine to affirm summary judgment for the state, dismissing tort claims alleging the department of transportation (DOT) negligently issued a drivers' license to a visually impaired driver.... Five days after Schulte's license was reissued, he was driving on a county road and struck a bicyclist, Charles Kolbe, inflicting severe injuries. Kolbe sued the State, alleging that it "negligently and without adequate investigation issued driving privileges" to Schulte despite knowledge of his impaired vision. Kolbe claimed Iowa Code chapter 321 created a particularized class-"rightful users of the Iowa roads." The district court granted the state's motion for summary judgment. In affirming the summary judgment on the public-duty doctrine, we held the requisite special relationship was lacking because "the licensing provisions in Iowa Code chapter 321, and more specifically Iowa Code section 321.177(7), are for the benefit of the public at large." We reach the same conclusion as to the DNR's role at Storm Lake. Boaters at Storm Lake, like motorists driving on Iowa roadways, are members of the general public, not a special class of "rightful users of the lake" for purposes of the public-duty doctrine.
Id . at 60-61 (footnote omitted) (citations omitted) (quoting Kolbe , 625 N.W.2d at 724-25, 728, 729 ). In short, boaters using a lake that is open to the public for recreational purposes would be considered members of the public at large, not a special class.
In light of these precedents, the public-duty doctrine appears to control this case. Any duty to remove obstructions from the right-of-way corridor adjacent to the highway would be a duty owed to all users of this public road. It would thus be a public duty. See id. at 61-62 ; Kolbe , 625 N.W.2d at 728-30. Just as boaters on Storm Lake are members of the general public, so are persons who use the county road. See Estate of McFarlin , 881 N.W.2d at 61-62. Furthermore, Iowa Code section 318.4 does not alter the analysis. Johnson does not claim she has a private right of action under this law. Cf. id. at 58 (rejecting a private right of action under statutes relating to state-owned bodies of water and dredging); Kolbe , 625 N.W.2d at 727 (finding no private right of action under driver licensing statutes and regulations). Thus, *262 section 318.4 would not affect the public-duty determination unless it was enacted for the benefit of a "particularized class." Cf. Kolbe , 625 N.W.2d at 728-29. Users of the public roads, however, are not such a class. Id . at 729-30.[1]
Nevertheless, Johnson argues that the public-duty doctrine does not apply here for several reasons. We will now turn to these contentions.
B. The Public-Duty Doctrine and the Restatement (Third) of Torts . Initially, Johnson argues that the public-duty doctrine did not survive our adoption of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. There are two problems with this argument: we have said otherwise, and the Restatement (Third) has said otherwise.
In Estate of McFarlin , we specifically addressed whether the public-duty doctrine retains its previous vitality under the Restatement (Third). 881 N.W.2d at 59-60. We determined that "the public-duty doctrine remains good law after our adoption of sections of the Restatement (Third) of Torts." Id . at 60.
As we pointed out in Estate of McFarlin , the reporters' note to section 7 of Restatement (Third)-the general duty provision-recognizes the public-duty doctrine. Id. at 59-60 (quoting the note); see Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 reporters' note cmt. g , at 93-94 (Am. Law Inst. 2010) [hereinafter Restatement (Third) ]. This is reaffirmed in a comment to section 37 of the Restatement (Third):
The limitless potential liability that might be visited on government entities if affirmative duties were imposed on them for every undertaking has influenced courts in limiting the existence and scope of affirmative duties to which government entities are subject. Some courts insist on a "special relationship" between the plaintiff and a public entity that distinguishes the plaintiff from the public at large before imposing an affirmative duty.
Restatement (Third) § 37 cmt. i , at 7 (Am. Law Inst. 2012).
Johnson argues that Estate of McFarlin failed to consider the fact that Restatement (Third) section 14 has superseded Restatement (Second) of Torts section 288. The latter section was entitled, "When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted," and provided in part,
The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively
....
(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public....
Restatement (Second) of Torts § 288, at 29 (Am. Law Inst. 1965).
Restatement (Third) section 14 is entitled "Statutory Violations as Negligence Per Se," and states,
An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class *263 of persons the statute is designed to protect.
Restatement (Third) § 14, at 154. Thus, Johnson insists that Restatement (Third) section 14 no longer openly embraces the public-duty doctrine.
Yet Johnson overlooks a key point. A goal of the Restatement (Third) was to clear away prior confusion between the duty determination and the negligence determination. See Restatement (Third) § 7 cmt. i , at 81-82. Section 288 of the Restatement (Second) conflated the two, by setting forth the public-duty rule within a negligence provision. See Restatement (Second) of Torts § 288(b) ; see also Wilson v. Nepstad , 282 N.W.2d 664, 671-72 (Iowa 1979) (applying Restatement (Second) of Torts § 288(b) to find the public-duty rule did not apply). Section 14 of Restatement (Third), on the other hand, is a negligence provision only, dealing with the question whether a statutory violation constitutes negligence per se. See Restatement (Third) § 14, at 154. Thus, comment i to section 14 indicates that the section "primarily applies when the issue is whether the actor's conduct is negligent-whether it lacks reasonable care." See id. cmt i , at 160. It does recommend the court "give appropriate weight" before it applies a no-duty rule when "the defendant has violated a statute that seeks to protect the plaintiff against a certain type of accident." Id. But this doesn't vitiate the public-duty rule where the statute as here protects the public generally.
On a related note, Johnson also directs us to the Restatement (Third) section 38, which provides, "When a statute requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty." Restatement (Third) § 38, at 20-21.
Consider, though, the example provided in Illustration 2 to section 38, which describes a statute that "requires all public schools to test all students for scoliosis, an abnormal curvature of the spine." Id. cmt. c , illus. 2, at 22. A student is not tested, and as a result she suffers enhanced harm due to a delayed diagnosis. Id . The analogy is imperfect, because in that example the potential duty would be owed only to students attending a particular school, whereas here the duty would be owed to all users of a public road. Nonetheless, the Restatement concludes that "[t]he legislature's concern about preserving school districts' financial resources counsels against the court finding that [the school] had an affirmative duty to [the student] with regard to scoliosis testing." Id . at 22-23. In other words, one of the illustrations to Restatement (Third) section 38 actually bolsters Estate of McFarlin 's conclusion that the public-duty doctrine "remains good law." 881 N.W.2d at 60.
Finally, Johnson cites Restatement (Third) section 40(b)(3). This provision addresses the special relationship created when "a business or other possessor of land ... holds its premises open to the public with those who are lawfully on the premises." Restatement (Third) § 40(b)(3), at 39. One problem with Johnson's position is that the County did not possess the land on which the concrete embankment was located. The County was not "a person who occupies the land and controls it." Id. § 49(a), at 224. The land in question belonged to the Beckers, and the County had only an easement.
C. The Public-Duty Doctrine and the Iowa Municipal Tort Claims Act. Johnson next contends the public-duty doctrine is not available for claims brought under the Iowa Municipal Tort Claims Act, Iowa Code chapter 670. She maintains that because section 670.2 provides "every municipality *264 is subject to liability for its torts," the County may not assert the public-duty doctrine to restrict its liability. See Iowa Code § 670.2.
However, Johnson erroneously equates immunity (as waived by the Iowa Municipal Claims Act) with the common law public-duty doctrine. See Estate of McFarlin , 881 N.W.2d at 59. We have said, "Unlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place." Id. (quoting Raas , 729 N.W.2d at 448 ). Because "[t]he public duty rule is not technically grounded in government immunity," the Iowa Municipal Tort Claims Act and the public-duty doctrine may coexist without conflict. See Raas , 729 N.W.2d at 448 (quoting 18 Eugene McQuillin, McQuillin on Municipal Corporations § 53.04.25 (3d ed. 2006) ).
As Johnson concedes, we have effectively ruled on this issue. See Kolbe , 625 N.W.2d at 730. We determined in Kolbe that the public-duty doctrine was still viable, despite enactment of the Iowa Tort Claims Act, which partially abrogates the state's sovereign immunity in the same manner as the Municipal Tort Claims Act does for political subdivisions of the state. See id. at 725. We discussed the doctrine specifically in light of the Iowa Tort Claims Act and ultimately applied the doctrine to bar the plaintiff's claims. Id. at 729-30.
After Kolbe , we readdressed this issue in Raas , 729 N.W.2d at 449. We found "[o]ur cases decided after the adoption of the State Tort Claims Act continue[d] to recognize the public-duty doctrine, and ... they ... clearly upheld the continued validity of the doctrine." Raas , 729 N.W.2d at 448-49 (listing cases). We concluded that despite the enactment of a tort claims statute that partially abrogated sovereign immunity-just as the Iowa Municipal Torts Claims Act does-the public-duty doctrine was nevertheless "alive and well in Iowa." See id. at 449.
Lastly, in Estate of McFarlin , we reaffirmed our rejection in Raas of the "argument that we should abandon the public-duty doctrine, as some other states have done, because the doctrine was supplanted by the enactment of tort claims statutes that partially abrogate sovereign immunity." Estate of McFarlin , 881 N.W.2d at 59.
D. Wilson v. Nepstad . Johnson also invokes a 1979 decision of this court- Wilson v. Nepstad , 282 N.W.2d 664. That case arose out of a fire in an apartment building that resulted in deaths and injuries. Id . at 666. The plaintiffs sued, inter alia, the City of Des Moines for negligently inspecting and permitting the building. Id . The city argued that "the applicable state and municipal inspection laws are designed to protect the public generally and do not create a duty of care to these individual plaintiffs." Id . at 667. A majority of the court signaled a potential shift away from the public-duty doctrine, indicating that
a municipality is liable for tortious commissions and omissions when authority and control over a particular activity has been delegated to it by statute and breach of that duty involves a foreseeable risk of injury to an identifiable class to which the victim belongs.
Id . at 671. Regardless, in that case, the court found that the public-duty doctrine did not apply because the ordinances and statutes "were designed for the protection of a special, identifiable group of persons[,] lawful occupants of multiple dwellings," and "not members of the public generally." Id . at 672. On this basis, the court reversed the district court's dismissal of the city from the case. Id . at 674.
*265 Only five members of the court joined the majority, however. Three justices specially concurred on the basis that the statutes and ordinances themselves were not in the record. Id . at 674 (McCormick, J., specially concurring). The special concurrence explained that such statutes and ordinances normally do not establish a legal duty on the part of the municipality. Id . at 674-75.
Wilson was decided nearly four decades ago. Subsequent decisions of our court like Raas and Estate of McFarlin have confirmed that the public-duty doctrine is "alive and well in Iowa." Estate of McFarlin , 881 N.W.2d at 59 (quoting Raas , 729 N.W.2d at 449 ).
E. An Exception to the Public-Duty Doctrine? Johnson also argues that even if the public-duty doctrine remains alive and well, it should not apply in this case because of the "grave danger" presented by this matter of "highway safety." But the public-duty doctrine applies even when highway safety is involved. See Kolbe , 625 N.W.2d at 728-30.[2]
One can also debate the degree of danger here. The County presented undisputed evidence that there had been no complaints, concerns, or requests for action during the forty years the concrete embankment had been in place. The embankment was in neither the traveled portion of the right-of-way nor the shoulder. See Iowa Code § 318.1(6). It is also undisputed that the driver of the Silverado fell asleep at the wheel, drove across the other side of the highway, kept going off the highway into a ditch, and then traveled without applying the brakes for over 200 feet before striking the embankment. When a driver falls asleep and loses control of the vehicle, unfortunately many bad things can happen. These include a head-on collision with oncoming traffic; other vehicle collisions; or a collision with a road sign, a light standard, a guard rail, or other object. See, e.g. , State v. Butler , 706 N.W.2d 1, 2 (Iowa 2005) (driver "probably fell asleep at the wheel," "crossed the centerline of the highway and struck five motorcyclists, killing three and seriously injuring two"). Regardless, this is an argument about foreseeability, not duty, and it no longer holds water under the Restatement (Third) of Torts. See Thompson v. Kaczinski , 774 N.W.2d 829, 835 (Iowa 2009).
Johnson also argues that Estate of McFarlin is distinguishable because the state there did not have control of the dredge pipe. 881 N.W.2d at 53-54. While there are some factual distinctions between the two cases, they do not on the whole cut in favor of Johnson. In Estate of McFarlin , the state actually owned and managed the lake. Id. While it did not operate the dredge pipe, it actually permitted the dredging and where it would occur on an annual basis. Id. at 54. There had *266 been prior reports to the state of boaters striking the dredge. Id. The state also placed buoys on the lake, although not the ones specifically warning about the dredge pipe. Id . Here, the concrete embankment was on private property and had been there without incident for forty years. And while the County could have ordered the removal of the embankment, the state certainly had the same degree of "control" over the dredge pipe in Estate of McFarlin . See id. In fact, the state authorized its presence on an annual basis. Id.
F. Claims Other than Negligence. Johnson urges that the district court erred in dismissing her nuisance and premises-liability claims against the County because the public-duty doctrine only prevents the recognition of a common law duty of reasonable care. Our cases applying this doctrine belie Johnson's contention. We said in Kolbe , "[I]f a duty is owed to the public generally, there is no liability to an individual member of that group." 625 N.W.2d at 729 (quoting Wilson , 282 N.W.2d at 667 ). "No liability" includes these other tort claims. In fact, the plaintiffs had alleged a premises-liability claim against the state in Estate of McFarlin v. State , No. 14-1180, 2015 WL 5292154, at *6 (Iowa Ct. App. Sept. 10, 2015).
Finally, Johnson added by amendment a count to her petition alleging a private right of action "under Iowa statutes." But as already noted, she does not contend that Iowa Code chapter 318 per se provides a private right of action. Her contention rather is that the nuisance statute (section 657.1) authorizes a suit for injuries resulting from the County's failure to follow section 318.4. Cf. Estate of McFarlin , 881 N.W.2d at 56-58 (rejecting plaintiffs' claim that various provisions in chapter 461A created a private right of action). As we have already explained, this claim cannot succeed because of the public-duty doctrine.
G. Nonfeasance vs. Misfeasance. Johnson also voices concern that applying the public-duty doctrine here would eliminate a plaintiff's ability to pursue a claim where a county negligently erects an obstacle directly in the path of motorists. We are not persuaded.
In the classic case for invoking the public duty doctrine, the duty is imposed by a statute that requires the defendant to act affirmatively, and the defendant's wrongdoing is a failure to take positive action for the protection of the plaintiff.
2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 345, at 375 (2d ed. 2011) (footnote omitted); see also id. § 346, at 380 (discussing "the fundamental distinction between positive acts of negligence on the one hand and non-action on the other"); 18 Eugene McQuillin, The Law of Municipal Corporations § 53:18, at 251 (3d rev. ed. 2013) [hereinafter McQuillin] ("The rule protects municipalities from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole.").
We believe the limited resources of governmental entities-combined with the many demands on those entities-provide a sound justification for the public-duty doctrine. See Restatement (Third) § 37, cmt. i. ; see also 18 McQuillin § 53:18, at 253-54.[3] Cities, counties, and the state *267 have to balance numerous competing public priorities, all of which may be important to the general health, safety, and welfare. This does not mean the same no-duty rule would protect that entity when it affirmatively acts and does so negligently. Cf. Skiff v. State , 125 Misc.2d 791, 479 N.Y.S.2d 946, 951 (1984) (finding the state could be liable when a vehicle left a state road and traveled along a drainage ditch into an earthen headwall where the ditch was "created by the State" and "constituted a trap or snare"). That case is not before us today.
V. Conclusion.
For the foregoing reasons, we affirm the district court's grant of summary judgment to the County.
AFFIRMED.
All justices concur except Wiggins, Appel, and Hecht, JJ., who dissent.

In Kolbe , we specifically distinguished Adam v. State , 380 N.W.2d 716 (Iowa 1986), because "the statute at issue in Adam was not for the benefit of the general public but rather 'was for the benefit of the class to which plaintiffs belong[ed]-producers doing business with grain dealers.' " Kolbe , 625 N.W.2d at 729 (alteration in original) (quoting Adam , 380 N.W.2d at 723 ).

Johnson cites Harryman v. Hayles and Symmonds v. Chicago, Milwaukee, St. Paul & Pacific Railroad. Harryman , 257 N.W.2d 631 (Iowa 1977), overruled on other grounds by Miller v. Boone Cnty. Hosp. , 394 N.W.2d 776, 781 (Iowa 1986), abrogated by Estate of McFarlin , 881 N.W.2d at 61 n.6 ; Symmonds , 242 N.W.2d 262 (Iowa 1976), abrogated by Estate of McFarlin , 881 N.W.2d at 61 n.6. In Harryman , this court found that a county owed a duty to a passenger in a vehicle who sustained serious and permanent injuries when the vehicle overturned after striking a washed-out portion of a county road. 257 N.W.2d at 633, 638. "This duty runs to all those rightfully using the roads." Id . at 638. In Symmonds , which arose out of a fatal automobile-train collision at an unguarded crossing on a county road, this court held a county owed a duty to install a stop sign at this "particularly hazardous crossing." 242 N.W.2d at 265. As we explained in Estate of McFarlin , these cases have been superseded by more recent authority, especially Kolbe . See Estate of McFarlin , 881 N.W.2d at 61 n.6.

According to McQuillin,
Courts give several reasons for the rule. First, it is impractical to require a public official charged with enforcement or inspection duties to be responsible for every infraction of the law. Second, government should be able to enact laws for the protection of the public without exposing the taxpayers to open-ended and potentially crushing liability from its attempts to enforce them. Third, exposure to liability for failure to adequately enforce laws designed to protect everyone will discourage municipalities from passing such laws in the first place. Fourth, exposure to liability would make avoidance of liability rather than promotion of the general welfare the prime concern for municipal planners and policymakers. Fifth, the public duty rule, in conjunction with the special relationship exception, is a useful analytical tool to determine whether the government owed an enforceable duty to an individual claimant.
18 McQuillin § 53:18, at 253-54 (footnotes omitted).