# IN THE COURT OF APPEALS OF IOWA

No. 18-1593
Filed August 7, 2019


**DENA JEAN BLAZEK, Administrator of the Estate of ADAM WILLIAM BLAZEK, Deceased; DENA JEAN BLAZEK, Individually, and as Next Friend of C.B. and A.B.,**
        Plaintiffs-Appellants,

**vs.**

**CITY OF NEVADA, IOWA and CITY OF NEVADA, IOWA EMPLOYEES DOE,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Story County, James A. McGlynn, Judge.

        The plaintiffs appeal the district court's decision granting the motion for summary judgment filed by the City of Nevada and unnamed City of Nevada employees in a suit seeking money damages for the death by suicide of Adam Blazek and the conduct of City of Nevada police officers.  **AFFIRMED.**


        William T. Talbot of Newbrough Law Firm, LLP, Ames, for appellants.

        Jason C. Palmer, Thomas M. Boes, and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.


        Considered by Vaitheswaran, P.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

Dena Blazek appeals the district court's decision granting the motion for summary judgment filed by the City of Nevada and unnamed City of Nevada employees in a suit seeking money damages for the death by suicide of her husband, Adam Blazek, and the conduct of City of Nevada police officers. Dena brought the suit in her personal capacity and in her representative capacities as the administrator of Adam's estate and as next friend of C.B., Dena's child from a previous marriage, and of A.B., Dena and Adam's child.[1] For the plaintiffs' tort-based causes of action (claims I, II, III, and V), the district court determined summary judgment was proper because the defendants did not owe a duty to Adam, Dena, or the children individually. For the plaintiffs' constitutional claims, the district court determined summary judgment was proper regardless of whether the claims were based on constitutional torts brought under *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017) or substantive due process claims. On further review, we conclude the district court properly granted summary judgment on all claims.

## I. Background Facts and Proceedings

All the facts pertinent to this appeal occurred within a twenty-four-hour period. The parties stipulated to the facts for the purpose of summary judgment. On the morning of February 3, 2016, Adam was at the family's home with C.B. and A.B., then thirteen and six years old respectively. Dena was at work. The children were loudly playing and laughing in C.B.'s bedroom when Adam came into the bedroom and told them to be quiet. He then left the room. The children

---

[1] For clarity, we use "plaintiffs" to refer to Dena in all three capacities collectively.

continued to play loudly, and Adam returned and told them if they would not be quiet, he would get his gun. A.B. responded that they would call 911 if he did that, to which Adam responded that they would be dead before the police showed up. Adam then left the bedroom again, returning a short time later with a handgun. Adam held the gun against his chest, frightening the children. He left the room again, and C.B. went into the bathroom to hide. She sent Dena a series of six to eight text messages at around 10:40 a.m., telling Dena what had happened.

Dena noticed the messages around 11:00 a.m. and was shocked by what she read. Adam had never threatened the children with the gun before, nor had he taken the gun out in Dena's presence before. Dena called C.B. and told her to get A.B. and get out of the house. Dena then called her father, Phil, who also lived in Nevada. She told Phil what had happened and asked him take the children to his house. He told her he would. C.B. tried to call Phil around this time, but Adam took her phone while C.B. was making the call. Dena then called Adam and told him her father would be picking the children up. During this call, Adam smashed C.B.'s phone. The children waited outside where Phil picked them up and brought them back to his house.

Dena then left work and travelled to Phil's house, where she spoke with the children. Around 3:45 p.m., she and her cousin Charlie traveled back to the Blazeks' home to gather the children's clothing and other items. Adam was present while they were there. Adam and Dena agreed to talk the next day about what had happened. While Dena and Charlie were leaving, Dena told Charlie she believed Adam would kill himself. She based this belief on the "eerie" feeling

she had while at the home and on how calm Adam had been while she was there with Charlie.

Dena and Charlie returned to Phil's house. On the advice of a family friend who was a retired police officer, Dena called the Nevada Police Department. Dena told the 911 operator what had happened, and the operator sent Officer Kelli Springer to speak with Dena at Phil's house. Officer Springer spoke with Dena, her parents, and the children. Dena told Officer Springer she believed Adam was suicidal and asked Officer Springer to perform a welfare check on Adam, which she agreed to do. She also told Officer Springer that Adam worked in Ames and would be leaving for work that night between 10:10 p.m. and 10:15 p.m. Dena warned Officer Springer Adam would likely not open the door for the police. Officer Springer told Dena the police would try to arrest Adam that night when he got to work and, if they were unable to do so, they would try again the next morning. Officer Springer advised Dena to stay at Phil's house that night and that she would call her if they arrested Adam that night. Dena agreed to stay at Phil's house and wait for Officer Springer's call. Officer Springer told Dena the police would arrest Adam for child endangerment and aggravated assault.

Officer Springer left Phil's house and went back to the police department building. There, she conferred with other police officers. The police determined the safest way to apprehend Adam was to arrest him once he arrived at work. From 9:50 p.m. to 10:50 p.m. that night, three police officers waited outside the Blazeks' home for Adam to come out. The police officers never observed Adam leave the Blazeks' home.

At around 3:15 a.m., the Nevada Fire Department received a call about a fire at the Blazeks' home. The fire department arrived at the home to find it engulfed in flames. Once the fire was out, firefighters and police officers searched the building and found Adam's body in the basement. His cause of death was determined to be a self-inflicted gunshot wound to the head. After an investigation, the police determined Adam had doused the upstairs and downstairs floors of the house in gasoline and started the fire before committing suicide.

Dena filed the petition on July 10, 2017; she did so in three capacities: her personal capacity, her capacity as executor of Adam's estate, and as next friend of C.B. and A.B. The petition alleged six causes of action: (I) negligent misrepresentation on the part of the Nevada Police Department;[2] (II) professional malpractice on the part of the police officers; (III) negligence resulting in wrongful death due to the Nevada Police Department's failure to arrest Adam quickly; (IV) violation of Adam's rights under the Iowa Constitution by the City of Nevada; (V) breach of fiduciary duty; and (VI) violation of Adam's rights under the Iowa Constitution by the anonymous City of Nevada employees. The defendants moved for summary judgment, and the district court granted their motion on all claims on August 17, 2018. The plaintiffs appeal.

## II. Standard of Review

We review motions for summary judgment for errors of law. *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019).

---

[2] Plaintiffs conceded there was no evidence supporting their claim of negligent misrepresentation in the district court.

"We view the record in the light most favorable to the nonmoving party." *Id.* (quoting *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

### III. Analysis

The district court granted the defendants' motion for summary judgment on claims I, II, III, and V because it determined neither the Nevada Police Department nor its officers had a duty to Adam, Dena, or the children. The district court granted the defendants' motion for summary judgment on claims IV and VI because the absence of evidence of malice and bad faith and the lack of probable cause defeated the claims whether they were based on tort theories or substantive due process theories.

### A. Tort Claims

Claims I, II, III, and V require the plaintiffs to show the defendants had a duty to Adam, Dena, or the children. *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001) ("As with all negligence actions, an essential element of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff. In the context of negligent misrepresentation, this means the person who supplies the information must owe a duty to the person to whom the information is provided."); *see also McGraw v. Wachovia Sec., L.L.C.*, 756 F. Supp. 2d 1053, 1070 (N.D. Iowa 2010) (citing *Smith v. Koslow*, 757 N.W.2d 677, 680 (Iowa 2008)) ("In professional negligence actions, as in other negligence

actions, the plaintiff must prove a duty of care was owed to him or her . . . ."); *Shivvers v. Hertz Farm Mgmt., Inc.*, 595 N.W.2d 476, 480 (Iowa 1999) ("The existence of a fiduciary relationship necessarily assumes one of the parties has a duty to act for or to give advice for the benefit of the other upon matters within the scope of the fiduciary relationship."). "The existence of a legal duty is a question of law." *Kolbe v. State*, 661 N.W.2d 142, 146 (Iowa 2003). The defendants argue the public-duty doctrine applies to the officers' actions and their inaction defeating the plaintiffs' claims. The plaintiffs argue the doctrine does not apply to their claims or one of the doctrine's exceptions to immunity applies. We address each argument in turn.

The public-duty doctrine "does not allow individuals to sue the government for breach of a duty owed to the public at large." *Johnson v. Humboldt Cty.*, 913 N.W.2d 256, 259 (Iowa 2018). A plaintiff can maintain an action against a government actor, however, if they "can establish, based on the unique or particular facts of the case, a special relationship between the State and the injured plaintiff." *Kolbe*, 625 N.W.2d at 729 (emphasis omitted). In Iowa, police officers "do not owe a particularized duty to protect individuals; rather, they owe a general duty to the public." *Morris v. Leaf*, 534 N.W.2d 388, 390 (Iowa 1995). Thus, unless the plaintiffs can establish a special relationship between the defendants and the Blazek family based on the officers' actions, their tort claims must fail.

We first address whether the defendants had a special relationship with Adam. "[T]he law generally imposes no duty upon an individual to protect another person from self-inflicted harm in the absence of a 'special relationship,'

usually custodial in nature." *Jain v. State*, 617 N.W.2d 293, 297 (Iowa 2000). The plaintiffs do not allege any custodial relationship existed between Adam and the defendants. The defendants did not interact with Adam at all. Like the district court, we conclude the plaintiffs have failed to establish the existence of a special relationship between Adam and the defendants. As they relate to Adam, claims I, II, III, and V fail as a matter of law.

We similarly conclude claims I, II, III, and V must fail as they relate to Dena and the children. While the defendants did interact with Dena and the children by speaking with them, this interaction does not create a special relationship. Police promises to perform actions are not sufficient to create a special relationship. *Allen v. Anderson* 490 N.W.2d 848, 856 (Iowa Ct. App. 1992); *Hawkeye Bank & Tr. Co. v. Spencer*, 487 N.W.2d 94, 96 (Iowa Ct. App. 1992). As noted above, a special relationship between the police and a member of the public is typically custodial in nature. *Jain*, 617 N.W.2d at 297; *see also Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 182 (Iowa 1991) (providing hospitals and jails as examples of custody). Viewing the facts in the light most favorable to the plaintiffs, we conclude there was no custodial relationship between the defendants, Dena, and the children. Dena and the children were advised by Officer Springer to remain at Phil's house, but they were not compelled by Officer Springer or the defendants to do so.

The plaintiffs urge us to find a special relationship exists between the Blazeks and the defendants because "the twin grave dangers of suicide and gun violence" created by Adam's actions were sufficient to create a special duty between law enforcement and the family. The plaintiffs cite the Iowa Supreme

Court's recent decision in *Johnson* as support for this argument. *See* 913 N.W.2d at 265. In *Johnson*, a driver had fallen asleep at the wheel and crashed his vehicle into a concrete embankment in a ditch on the side of the road. *Id.* at 259. The embankment was located within the area covered by defendant Humboldt County's right-of-way easement related to the road. *Id.* The driver argued the public-duty doctrine did not apply to defeat his claim because of "the 'grave danger' presented by this matter of 'highway safety.'" *Id.* at 265. The court rejected this argument. *Id.* The public-duty doctrine applied "even when highway safety is involved," and the earlier cases that supported the driver's "grave danger" argument had been "superseded by more recent authority." *Id.* at 265 n.2. Like highway safety, the public-duty doctrine applies to situations involving police inaction. *See, e.g., Sankey v. Richenberger*, 456 N.W.2d 206, 209–10 (Iowa 1990) (applying public-duty doctrine to a police chief's failure to prevent a fatal shooting at a city council meeting); *Donahue v. Washington Cty.* 641 N.W.2d 848, 851–52 (Iowa Ct. App. 2002) (applying public-duty doctrine to a police officer's failure to seize a dog known to harm people). We conclude no exception to the public duty doctrine is created by the "twin grave dangers of suicide and gun violence."

Because no special relationship was present between the defendants and any members of the Blazek family, the only duty owed by the City of Nevada police officers to the Blazek family was their duty to protect the public at large. We conclude the district court properly granted summary judgment on claims I, II, III, and V.

### B. Constitutional Claims

We next address claims IV and VI. The plaintiffs claim the defendants violated their constitutional rights under article I, sections 1 and 9 of the Iowa Constitution. The district court determined either both counts were based on tort theories and should be dismissed for the absence of duty as counts I, II, III, and V were, or the claims were based on alleged violations of substantive due process rights and should be dismissed under the rules developed to adjudicate § 1983 actions. *See* 42 U.S.C. § 1983. Claim VI states defendants City of Nevada employees informed "the Plaintiffs that Adam Blazek would be arrested, or at least, that a welfare check would be made" and "[t]hat in total [the defendants'] conduct more than shocks the conscience."[3]

The parties agree the plaintiffs must prove each of the following elements to prevail on their claims:

1. The defendant deprived the plaintiff of a right protected by the Iowa Constitution;
2. The defendant acted under color of state law;
3. The legislature has not provided an adequate remedy;
4. The defendant's conduct was a proximate cause of the plaintiff's damage; and
5. The amount of damage.

Iowa Bar Ass'n, Iowa Civil Jury Instructions 3000.1. Because the plaintiffs cannot show the defendants deprived any of them of any right protected by the Iowa Constitution, we conclude the district court properly granted summary judgment on these claims.

---

[3] The complaint did not specify whose constitutional rights were asserted by claims IV and VI. The district court assumed all plaintiffs' rights were asserted in both claims. On appeal, the plaintiffs state claims IV and VI were meant to include all rights of all plaintiffs.

We begin with claim IV, which alleges the defendants deprived Adam of his rights under article I "by failing to intervene to prevent his death." "There is no constitutional right to be arrested and charged at the precise moment probable cause comes into existence." *State v. Trompeter*, 555 N.W.2d 468, 470 (Iowa 1996); *see also DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989) ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.").

The defendants did not interact with or take custody of Adam at any point. Neither party cites any case from any jurisdiction holding that a municipal defendant or its employees deprives a person or their family members of a right to life, liberty, the pursuit of happiness, or due process of law by failing to arrest that person or to intervene to prevent suicide. And as addressed above, no special relationship existed between the Blazeks and the defendants that triggered an obligation beyond the police officers' general duty to protect the public at large. The Iowa Supreme Court has not held the public-duty doctrine applies to constitutional tort claims brought under *Godfrey v. State*, 898 N.W.2d 844, 846–47 (Iowa 2017). The court has clarified, however, that common law immunities and defenses were not displaced by the all-due-care defense to constitutional claims established in *Baldwin v. City of Estherville*, 915 N.W.2d 259, 281 (Iowa 2018). *Venckus v. City of Iowa City*, ___ N.W.2d ___, ___, 2019 WL 2710807, at *4 (Iowa 2019) ("The *Baldwin* immunity is in addition to any other common law immunities or defenses available and not a comprehensive

substitute immunity."). To the extent claims IV and VI allege constitutional tort claims, we conclude the public duty doctrine applied to the police officers' actions and the district court properly granted summary judgment under the same application of the public duty doctrine as on claims I, II, III, and V.

Finally, the plaintiffs argue the defendants' failure to intervene with Adam created a significant risk of serious harm and their conduct "shocks the conscience" such that the plaintiffs' substantive due process rights were violated. "[T]he shocks-the-conscience test is reserved for 'the rarest and most outrageous circumstances.'" *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 553 (Iowa 2019) (quoting *United States v. Duvall*, 846 F.2d 966, 973 (5th Cir. 1988)). "[I]n order to meet the test, government action must be, among other things, 'offensive to human dignity.'" *Id.* at 554 (quoting *Blumenthal Inv. Trs. v. City of W. Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001)). "[T]he collective conscience of the United States Supreme Court is not easily shocked." *Id.* (quoting *Blumenthal*, 636 N.W.2d at 265). Situations that meet the shocks-the-conscience test include "outrageous utilization of physical force; state-sponsored imposition of uncalled-for embarrassment or ridicule; or intolerable, disreputable, and underhanded tactics that may arise from government action deliberately designed to penetrate the attorney-client privilege." *Id.*

Viewing the facts in the light most favorable to the plaintiffs, we conclude the district properly granted the defendants' motion for summary judgment on claims IV and VI to the extent those claims allege the defendants deprived the Blazek family of their substantive due process rights under article I, section 9 of the Iowa Constitution. "[U]nder substantive due process analysis, the state is

given great leeway in achieving its legitimate goals, particularly related to public safety." *Id.* (citing *Mackey v. Montrym*, 443 U.S. 1, 17–19 (1979)). The undisputed facts show the City of Nevada police spoke with Dena, gathered information from her, advised her not to return to the home, formulated a plan to apprehend Adam based on what they knew, and then attempted to carry out their plan. None of the actions or inactions of the police officers constituted the outrageous use of physical force, state-sponsored embarrassment, or underhanded tactics designed to penetrate the attorney-client privilege the Iowa Supreme Court and United States Supreme Court have held violate an individual's substantive due process rights.

We affirm the grant of summary judgment to the defendants on all claims.

**AFFIRMED.**