# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-3096

_____

Victor Barrios Maldonado, through his Guardian, Lidia Marina Mazariegos Ochoa; Lidia Marina Mazariegos Ochoa, individually as wife to Victor Barrios Maldonado

*Plaintiffs - Appellants*

v.

City of Sibley

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: October 18, 2022
Filed: January 26, 2023

_____

Before COLLOTON, KELLY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Victor Maldonado was electrocuted by a powerline owned and operated by the City of Sibley, Iowa. Maldonado and his wife Lidia Ochoa sued the City, in relevant part, for negligence and negligence per se. Ochoa also brought a loss of consortium claim. The district court granted summary judgment. We reverse the

-1-

district court's grant of summary judgment as to negligence and affirm as to negligence per se. The loss of consortium claim is also reinstated.

I.

Maldonado was working on the roof of a building in Sibley, Iowa, when a metal downspout he was installing is believed to have contacted a 7200-volt powerline suspended over the roof. Maldonado was electrocuted, causing him to fall off the building and suffer severe injuries.

The powerline was installed in the early 1970s and was part of a municipal utility owned and operated by the City of Sibley. At the time of the accident, the clearance between the rooftop and powerline was ten feet, five inches. The municipal utility is regulated by the Iowa Utilities Board (IUB) and the Iowa Administrative Code, which has adopted the National Electrical Safety Code (NESC). The NESC specifies minimum clearances between buildings and high voltage lines. Until 1977, the NESC only required a minimum clearance of 8 feet, but at the time of the accident, it required a minimum clearance of 12.5 feet. The NESC contains a "grandfather" clause which states that "[e]xisting installations that currently comply with prior editions of the Code . . . need not be modified to comply with these rules except as may be required for safety reasons by the administrative authority." NESC § 013.B.2.

Maldonado and Ochoa sued the City for negligence, negligence per se, and gross negligence. Ochoa also brought a loss of consortium claim. The district court granted summary judgment to the City on each claim. Specifically, the district court found that Maldonado's claims were barred by the public-duty doctrine, and alternatively, that they failed as a matter of law. Maldonado appeals on the negligence and negligence per se claims.

## II.

We review the district court's grant of summary judgment *de novo*. *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view facts in the light most favorable to the nonmoving party, and we make no determinations of credibility; nor do we weigh the evidence or draw inferences, as those functions belong to the jury." *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 971 (8th Cir. 2019).

## A.

We first examine whether Maldonado's negligence per se and negligence claims survive summary judgment. Maldonado argues that both have genuine issues of fact that preclude summary judgment.

Under Iowa law, an injury is actionable as negligence per se if "a statute or regulation . . . provides a rule of conduct specifically designed for the safety and protection of a certain class of persons, and a person within that class receives injuries as a proximate result of a violation of the statute or regulation." *Wiersgalla v. Garrett*, 486 N.W.2d 290, 292 (Iowa 1992). "[H]owever, the harm for which the action is brought must be of the kind which the statute was intended to prevent." *Id.* (cleaned up).

Maldonado alleges that the City violated the Iowa Administrative Code, specifically (1) its adopted NESC standards and (2) Iowa Administrative Code 199-25.4(1), which states that: "Corrective action shall be taken within a reasonable period of time on all potentially hazardous conditions, instances of safety code noncompliance, maintenance needs, potential threats to safety and reliability, or other concerns identified during inspections. Hazardous conditions shall be corrected promptly." We disagree.

It is undisputed the City complied with the NESC as adopted by Iowa safety regulations. Iowa Code § 478.20 governs the minimum distance between electric transmission lines and buildings, and requires municipal utilities to conform to any "rules, regulations, or specifications established by the [IUB] in the construction, operation, or maintenance of such lines." Iowa Code § 478.20. The IUB has adopted nearly all of the NESC, including its grandfather clause. *See* Iowa Admin. Code r. 199–25.2(1) (2017). It is undisputed that the powerline complied with the NESC's eight-foot minimum height requirement when it was installed in the early 1970s. So by virtue of the grandfather clause, the powerline's height never violated Iowa regulations.

As to Iowa Administrative Code 199-25.4(1), both the IUB and the City routinely inspected the powerline after it was installed, and there is no evidence that either identified any potentially hazardous conditions or safety code noncompliance. No administrative authority has ever required the City to raise the powerline. Because there is no evidence that the City violated the NESC or Iowa Administrative Code 199-25.4(1), the City is entitled to summary judgment on Maldonado's negligence per se claim.

Maldonado also argues that there is a genuine dispute of material fact on his negligence claim. "To succeed on a claim for negligence, the plaintiffs must show the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 41 (Iowa 2018) (citation omitted).

The district court found that there was no evidence that the City breached its duty because the City's powerlines complied with state height regulations. Maldonado argues that compliance with the NESC is not dispositive of the issue of negligence.

-4-

In *Johnson v. Interstate Power Co.*, the Iowa Supreme Court found that the updated NESC standards were "relevant and admissible" in a trial for negligence against a power company, even though the powerline at issue complied with the NESC. 481 N.W.2d 310, 316 (Iowa 1992). There, the powerlines complied with NESC standards when they were installed in 1963, but didn't meet its updated minimum height requirements established in 1977. *Id.* Still, the powerlines complied with the NESC through its grandfather provision. *Id.* The court found that "[a]lthough the jury could not consider a breach of the 1977 NESC minimum clearance requirements as negligence per se, the jury was certainly entitled to consider such requirements as evidence of negligence." *Id.*

The City argues that the NESC, as adopted by Iowa regulations, establishes the standard of care. But it hasn't pointed to any authority stating that compliance with Iowa regulations is conclusive of the standard of care in ordinary negligence actions. *Johnson* was also decided after the Iowa Administrative Code adopted the NESC. We believe that compliance with Iowa regulations is not dispositive of the standard of care for negligence.

Because a jury could find that the City breached its duty, Maldonado's negligence claim has genuine issues of fact for trial.

B.

Having established that Maldonado's negligence claim can survive summary judgment, we next examine whether it is barred by the public-duty doctrine. "The public-duty doctrine examines whether the governmental entity owed any enforceable duty to plaintiffs." *Breese v. City of Burlington*, 945 N.W.2d 12, 18 (Iowa 2020). If the government owes a duty to the public generally, "there is no liability to an individual member of that group." *Id.* The Iowa Supreme Court has also explained that the public-duty doctrine generally bars claims only when (1) "the injury to the plaintiff was directly caused or inflicted by a third party or other independent force" and (2) "the plaintiff alleges a governmental entity or actor

breached a uniquely governmental duty, usually, but not always, imposed by statute, rule, or ordinance to protect the plaintiff from the third party or other independent force." *Fulps v. City of Urbandale*, 956 N.W.2d 469, 473–74 (Iowa), *as amended* (Apr. 6, 2021).

The Iowa Supreme Court has recently distinguished between government *misfeasance* and *nonfeasance*, explaining that the public-duty doctrine only bars claims of government nonfeasance, not misfeasance. *Breese*, 945 N.W.2d at 19–20. Government misfeasance occurs "[w]here the affirmative acts of a public employee actually cause the harm." *Id.* at 20 (citation omitted). On the other hand, government nonfeasance is "a failure to discharge a *governmental* duty for the benefit of the public." *Fulps*, 956 N.W.2d at 475. So, the public-duty doctrine generally applies when the "government fail[s] to adequately enforce criminal or regulatory laws for the benefit of the general public or . . . protect the general public from somebody else's instrumentality." *Id.* (cleaned up); *see also Breese*, 945 N.W.2d at 20–21. Sure enough, this is a "gray area" and "[s]ome cases can be characterized as examples of either misfeasance or nonfeasance," but "[w]hat is clear is that we have generally applied the public-duty doctrine when the allegation is a government failure to adequately enforce criminal or regulatory laws for the benefit of the general public." *Breese*, 945 N.W.2d at 21. In short, if Maldonado's claim is for misfeasance, the doctrine does not bar it.

In its most recent cases addressing the public-duty doctrine, the Iowa Supreme Court found the doctrine inapplicable to certain claims because they involved government misfeasance. In *Breese*, the doctrine was inapplicable where the plaintiff was injured by falling off a city sewer box because a jury could find the city was affirmatively negligent in connecting a public pathway to the sewer box. *Id.* In *Fulps*, the doctrine didn't apply where plaintiffs alleged negligence for failure to maintain, repair, and warn about an uneven sidewalk because "'nonfeasance' . . . does not mean that the City can install a sidewalk and never worry about maintaining it." 956 N.W.2d at 475. And in *Estate of Farrell v. State*, the doctrine didn't bar claims that the state negligently designed, constructed, and operated a confusing

interchange because such claims constituted misfeasance. 974 N.W.2d 132, 139 (Iowa 2022). *Farrell* also reiterated that "the public-duty doctrine is inapplicable when the government defendants' affirmative negligence (misfeasance) created a dangerous condition on government-owned property that caused the injury" and that "the government defendants in this case remain liable for their own property and work." *Id.* at 138–39.

Here, Maldonado's negligence claim is for "*locating* and *operating* high voltage power facilities dangerously close to the building where Maldonado was working." First Am. Compl. ¶ 28 (emphasis added). The powerline at issue was owned and operated by the City, just like the interchange in *Farrell*, the sidewalk in *Fulps*, and the sewer box and bike path in *Breese*. *See Farrell*, 974 N.W.2d at 139 ("In both *Fulps* and *Breese*, the government defendant owned the dangerous condition (the sidewalk or bike path) and each defendant's affirmative negligence, or misfeasance, created the danger. The same is true here."). Maldonado alleges that the City was negligent in locating the powerlines and operating them, just as the plaintiffs in *Breese*, *Fulps*, and *Farrell* alleged negligence of the construction or operation of the City's own property. These cases suggest Maldonado's negligence claim is for the City's misfeasance.

The City argues that the public-duty doctrine bars Maldonado's claims because there is no special relationship—that is, a relationship that creates a duty—between the City and Maldonado. Although it's true that "if a duty is owed to the public generally, there is no liability to an individual member of that group," *Johnson v. Humboldt County*, 913 N.W.2d 256, 260 (Iowa 2018) (citation omitted), the Iowa Supreme Court clarified that the nature of the government's relationship to the plaintiff is only relevant in the context of government nonfeasance. *Breese*, 945 N.W.2d at 21. Because Maldonado's negligence claim is for government

misfeasance, the absence of a special relationship between Maldonado and the City is irrelevant.[1]

We hold that the public-duty doctrine does not bar Maldonado's negligence claim because it involves City misfeasance.

## III.

We reverse the district court's grant of summary judgment as to Maldonado's negligence claim and affirm as to his negligence per se claim. Ochoa's loss of consortium claim is reinstated accordingly.

_____

[1]The City cites several cases where the Iowa Supreme Court found the public-duty doctrine applied because there was no special relationship between the plaintiffs and the government. However, *Breese* clarified that these cases are consistent with the nonfeasance/misfeasance distinction because they concerned government nonfeasance. *See Breese*, 945 N.W.2d at 20 ("Although our cases prior to *Johnson* generally did not *talk* about a malfeasance/nonfeasance distinction, their *outcomes* support this distinction.").